**IN THE UNITED STATES DISRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| HANGZHOU JICAI PROCUREMENT CO., LTD. AND BEIJING ALICLOUD APSARA INFORMATION TECHNOLOGY CO., LTD., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 24-1092-GBW |
| ANACONDA, INC., | ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE
12(B)(1) AND 12(B)(6) AND THE DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201**

# TABLE OF CONTENTS

**Page**

I.      Introduction ................................................................................................1

II.     Statement of Facts .......................................................................................2

III.    Legal Standard ............................................................................................6

IV.     Argument .....................................................................................................6

    A.      Plaintiffs have Failed to Establish that They Have Standing to Bring This Declaratory Judgment Action. ...................................................................6

    B.      Because Plaintiffs Failed to Provide Sufficient Facts Necessary to Determine Whether There is Standing, Plaintiffs Have Also Failed To State a Claim Upon Which Relief Can Be Granted, And Their Complaint Should Be Dismissed. .........9

    C.      Even if Plaintiffs Could Sufficiently Plead Standing, the Court Should Decline Its Discretion to Exercise Declaratory Jurisdiction Over This Matter. .......................11

    D.      Because Plaintiffs Rushed to the Court House and Filed Preemptively, the First-to-File Rule Does Not Apply ..................................................................14

V.      Conclusion .................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner*,
387 U.S. 136, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967)............................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007)....................................................................................................10

*Bd. of Regents for Nw. Mo. State Univ. v. MSE Corp.*,
1990 U.S. Dist. LEXIS 17344 (W.D. Mo. 1990)............................................................12, 13

*Crosley Corp. v. Hazeltine Corp.*,
122 F.2d 925, 929 (3d Cir. 1941)...........................................................................................14

*United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*,
839 F.3d 242 (3d Cir. 2016)....................................................................................................6

*Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*,
10 F.4th 192 (3d Cir. 2021) ......................................................................................11, 12, 13

*E.E.O.C. v. Univ. of Pa.*,
850 F.2d 969 (3d Cir. 1988)..................................................................................................14

*Fun-Damental Too, Ltd. v. Universal Music Grp., Inc.*,
1997 U.S. Dist. LEXIS 4784 .........................................................................................14, 15

*Khodara Envtl., Inc. v. Blakey*,
376 F.3d 187 (3d Cir. 2004)................................................................................................7, 8

*Koch Eng'g Co. v. Monsanto Co.*,
621 F. Supp. 1204 (E.D. Mo. 1985)......................................................................................12

*Lattaker v. Rendell*,
269 Fed. Appx. 230, 2008 WL 723978, *2 (3d Cir. 2008).......................................................7

*Maniscalco v. Brother Int'l Corp. (USA)*,
627 F. Supp. 2d 494 (D.N.J. 2009) ......................................................................................7, 8

*Pa. Family Inst., Inc. v. Black*,
489 F.3d 156 (3d Cir. 2007)....................................................................................................6

*Pa. Psychiatric Soc'y v. Green Spring Health Servs.*,
    280 F.3d 278, n.8 (3d Cir. 2002) ............................................................6

*Reifer v. Westport Ins. Corp.*,
    751 F.3d 129 (3d Cir. 2014) ........................................................11, 13

*Santiago v. Warminster Twp.*,
    629 F.3d 121 (3d Cir. 2010) .............................................................10

*Stone v. Allied Indus. Supply, LLC,*
    2023 2023 U.S. Dist. LEXIS 60742, *2 ............................................14

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action,*
    678 F.3d 235 (3d Cir. 2012) ...............................................................6

*Surrick v. Killion*,
    449 F.3d 520 (3d Cir. 2006) ...........................................................7, 9

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) .........................................................................11

**Statutes**

28 U.S.C. § 2201(a) .............................................................................7, 11

Declaratory Judgment Act ........................................................7, 11, 12, 13

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ....................................................6

Federal Rules of Civil Procedure Rule 12(b)(6) ...........................................9

## I.    <u>INTRODUCTION</u>

No ripe case or controversy exists between Defendant Anaconda Inc. ("Anaconda") and Plaintiffs Hangzhou Jicai Procurement Co., Ltd. and Beijing AliCloud Apsara Information Technology Co., Ltd.'s, who are entities that were unknown to Anaconda prior to the filing of this action. While there is and has for some time been a dispute between Anaconda and certain Alibaba entities--*other than Plaintiffs*--in Texas, Plaintiffs here are seeking to defend a case that no one has ever threatened against them.

Plaintiffs filed this declaratory judgment action seeking advisory declarations regarding Anaconda's software contracts: (1) *after* Anaconda filed a lawsuit in Texas state court alleging breach of software contracts governed by Texas law with Texas forum selection clauses against Alibaba Group Holding Limited, Alibaba Cloud (Singapore) Private Limited, and Alibaba Cloud US LLC (collectively, the "Alibaba Affiliates"), (2) *after* Anaconda withdrew the Texas action without prejudice in order to engage in settlement discussions with the Alibaba Affiliates pursuant to the Alibaba Affiliates' execution of a tolling agreement and a mutual non-disclosure agreement – both governed by Texas law, and (3) *after* Anaconda informed the Alibaba Affiliates that it planned to resume the Texas action in light of the faltering settlement negotiations.

Anaconda has indeed refiled the Texas action against the Alibaba Affiliates, but Anaconda remains unfamiliar with the Plaintiffs who have asked this court to enter a declaration in their favor. The vague allegations in Plaintiffs' Complaint shed no light on this subject as Plaintiffs fail to allege they ever used Anaconda's software and carefully avoid elaborating on how the ongoing dispute with the Alibaba Affiliates would specifically implicate Plaintiffs. Plaintiffs also avoid

naming as co-plaintiffs the Alibaba Affiliates who have been subject to the ongoing dispute with Anaconda.[1]

The Court should dismiss Plaintiffs' action on the grounds that Plaintiffs lack standing to sue under Article III of the Constitution. Even if Plaintiffs were to have standing, the Court should abstain from exercising its discretion to issue a declaratory judgment when parallel litigation pending in Texas state court should decide these issues of contract which are largely governed by Texas law and subject to a Texas forum selection clause. Plaintiffs' filing here is nothing more than an anticipatory action filed in a transparent attempt to leapfrog the pending Texas action.

## II.    STATEMENT OF FACTS

### *Anaconda and Its Popular Software*

Anaconda is a corporation organized under the laws of Delaware with a principal place of business in Austin, Texas. Anaconda offers a popular platform particularly for businesses to develop and deploy software solutions. Declaration of Jane Kim ("Kim Decl.") ¶ 3. Founded in 2012, Anaconda sought to bring the Python programming language to business analytics. *Id.* ¶ 4. Today, Anaconda creates enterprise ready software to enable businesses to leverage open-source and AI with the right security, scale, and governance mechanisms in place. *Id.* Anaconda now has hundreds of full-time employees worldwide and serves millions of users, and its software is now used by many *Fortune 500* companies.  *Id.* ¶ 5.

Anaconda offers individuals and small businesses free access to its software but requires large companies to pay a license fee. *Id.* ¶ 6. Anaconda's Terms of Service expressly prohibit using the free offerings for commercial purposes without a paid plan: "Using the Free Offerings for a

---

[1] It remains unclear whether doing so would have destroyed diversity jurisdiction. Alibaba Cloud US LLC is a Delaware limited liability company, and to Anaconda's knowledge, its members' citizenship has not been disclosed.

Commercial Purpose **requires a Paid Plan** with Anaconda." *Id.* (emphasis added). Prior to installation of the Anaconda software, the individual or entity installing the software must affirmatively agree to Anaconda's End User License Agreement which reiterates the requirement that large companies acquire a paid license for their commercial uses among other substantive terms. *Id.* ¶ 7.

> *Anaconda's First State Court Contract Action*

On April 15, 2024, Anaconda filed a lawsuit in Texas, Travis County state court alleging that the Alibaba Affiliates had engaged in mass unauthorized use of Anaconda's software (the "April 2024 Texas Action"). *Id.* ¶ 8. Anaconda alleged that the Alibaba Affiliates breached two contracts governing use of Anaconda's software: Anaconda's Terms of Service (the "TOS") and Anaconda's End User License Agreement (the "EULA"). *Id.* ¶¶ 8–10. Ex. A. Specifically, Anaconda alleged that the Alibaba Affiliates assented to the TOS and EULA in order to gain access to the Anaconda software and then made internal commercial use of the software and/or embedded Anaconda's software into its own products and distributed it to others in violation of the contracts' terms without paying Anaconda for the software.  Complaint, D.I 1, Ex. A.

Section 15.1 of the EULA states that any action related thereto "will be governed and interpreted by and under the laws of the State of Texas…" Kim Decl. ¶ 9. It also states that "Courts of competent jurisdiction located in Austin, Texas shall have the sole and exclusive jurisdiction and venue over all controversies and claims arising out of, or relating to, this EULA." *Id.* The TOS that Anaconda asserted the Alibaba Affiliates assented to and breached in the lead up to the April 2024 Texas Action contained the same Texas choice of law and forum selection claim as the EULA. *Id.* ¶ 10, Ex. A.

*The Alibaba Affiliates Initiate Settlement Discussions & Sign Additional Texas Contracts*

In the weeks following Anaconda's filing of the of April 2024 Texas Action, the Alibaba Affiliates expressed what Anaconda believed to be a genuine interest in resolving Anaconda's claims of unauthorized use, and the parties entered into settlement negotiations. To facilitate these negotiations, the Alibaba Affiliates entered into two agreements with Anaconda: a Mutual Non-Disclosure Agreement and a Tolling Agreement; both effective as of May 10, 2024. *Id.* ¶ 11. Under the latter agreement, the parties agreed that the April 2024 Texas Action would be dismissed without prejudice, and the statute of limitations would be tolled for settlement discussions. *Id.* ¶ 12. Both Agreements included provisions that stated they should be interpreted under Texas law, with the NDA also including a forum selection clause choosing the Western District of Texas or Texas state courts in Travis County, consistent with the forum selection clause in the TOS at issue in April 2024 Texas Action. *Id.* ¶ 13; Declaration of Gina Durham ("Durham Decl.") ¶¶ 2–3, Exs. A & B. Both agreements were signed by counsel on behalf of the Alibaba Affiliates. *Id.* Pursuant to the Tolling Agreement, Anaconda filed the dismissal of the lawsuit without prejudice on May 10, 2024. Kim Decl. ¶ 14; Durham Decl. ¶ 2, Ex. A.

For the next four months, Anaconda believed it was negotiating with the Alibaba Affiliates in good faith. Kim Decl. ¶ 15. At no time during the negotiations, or when executing the NDA to facilitate discussion of commercial licensing terms were Plaintiffs mentioned to Anaconda. *Id.* ¶ 17.

In or around September 2024, negotiations with the Alibaba Affiliates broke down, and Anaconda informed the Alibaba Affiliates that it planned to refile the Texas lawsuit. Durham Decl. ¶ 4, Ex. C.

*Plaintiffs File This Anticipatory Action*

Before Anaconda could resume the Texas litigation, Plaintiffs Hangzhou Jicai Procurement Co, Ltd ("Jicai") and Beijing AliCloud Apsara Information Technology Co., Ltd. ("Apsara") rushed to the Delaware courthouse and filed this action. Kim Decl. ¶ 16. Prior to the filing of this declaratory judgment action, Anaconda had no knowledge of Plaintiffs Jicai and Apsara or their connection to the dispute at issue, if any. *Id.* ¶ 18.

Plaintiffs do not specifically allege what legal controversy exists between them and Anaconda. Complaint, D.I. 1. Plaintiffs do not allege that they have used Anaconda software, that they have contracted with Anaconda, or that they ever contemplated contracting with Anaconda. *Id.* The Complaint alleges that Plaintiff Jicai manages software procurement for various companies within the Alibaba corporate conglomerate but pleads no specific responsibilities for, or relationship to the Alibaba Affiliates that have been part of the ongoing dispute with Anaconda. *Id.* ¶¶ 4, 12. Apsara allegedly "operates various cloud computing products and services" but never actually alleges use of or interest in any Anaconda software. *Id.* ¶¶ 5, 13.

Moreover, Plaintiffs filed for Declaratory Judgment based on an updated Terms of Service which have been modified from the TOS alleged by Anaconda in the April 2024 Texas Action. *Id.* ¶ 15. Around the same time Anaconda filed the April 2024 Texas Action, it updated its TOS and altered the choice of law and forum to designate Delaware instead of Texas. Kim Decl. ¶ 19. The Plaintiffs attached the updated TOS to their Complaint to invoke the Delaware forum selection clause, but Plaintiffs do not allege that they assented to the updated TOS (nor do they allege that it applies to the Alibaba Affiliates who were sued for breach of the prior TOS). Complaint, D.I. 1.

*The Pending Texas Action*

On November 20, 2024, Anaconda refiled its Texas action against the Alibaba Affiliates (the "Pending Texas Action"). Durham Decl. ¶ 5. As with the April 2024 Texas Action, Anaconda alleges that the Alibaba Affiliates assented to and breached the EULA and TOS which are governed by Texas law and which have a forum selection clause designating Texas. See Durham Decl. ¶ 5, Ex. D.

## III.    LEGAL STANDARD

Lack of standing is a jurisdictional claim properly brought under Federal Rule of Civil Procedure 12(b)(1). *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). To have standing to sue under Article III of the Constitution, "a plaintiff must satisfy three constitutional preconditions: (1) a cognizable injury that is (2) causally connected to the alleged conduct and is (3) capable of being redressed by a favorable judicial decision." *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 165 (3d Cir. 2007) (citing *Pa. Psychiatric Soc'y v. Green Spring Health Servs.*, 280 F.3d 278, 288 n.8 (3d Cir. 2002)). Courts may evaluate matters outside the pleading when considering "a 'factual attack' on the Court's subject matter jurisdiction" under Federal Rule of Civil Procedure 12(b)(1). *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 251 (3d Cir. 2016).

## IV.    ARGUMENT

### A.    Plaintiffs have Failed to Establish that They Have Standing to Bring This Declaratory Judgment Action.

Because Plaintiffs have failed to allege sufficient facts to establish standing, and the circumstances of this dispute indicate that this dispute is not ripe as to these Plaintiffs, the Court should dismiss this action.

Under The Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . [a]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In a declaratory judgment action, the plaintiff must have Article III constitutional standing, but the plaintiff does not need to "have suffered the full harm expected." *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 193 (3d Cir. 2004) (citations and quotations omitted).

Third Circuit courts find Article III standing in declaratory judgment actions where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Khodara*, 376 F.3d at 193-194. To establish the controversy requirement, the plaintiff "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 504 (D.N.J. 2009) (quoting *Lattaker v. Rendell*, 269 Fed. Appx. 230, 2008 WL 723978, *2 (3d Cir. 2008)). This analysis requires that "to consider the fitness of the issue for adjudication to ensure that the declaratory judgment would in fact determine the parties' rights, as distinguished from an advisory opinion based on a hypothetical set of facts." *Surrick v. Killion*, 449 F.3d 520, 528 (3d Cir. 2006). This issue of ripeness is important to "prevent[] courts from 'entangling themselves in abstract disagreements.'" *Id.* at 527 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967)).

Here, Plaintiffs have failed to show that their legal interests are adverse to Anaconda, and Plaintiffs have failed to show a "substantial likelihood that [they] will suffer injury in the future." *Maniscalco*, 627 F. Supp. 2d at 504. Nowhere in the Complaint do Plaintiffs allege that they have ever used or distributed Anaconda software. Complaint, D.I. 1. Nowhere in the Complaint do

Plaintiffs allege that they downloaded software pursuant to the Anaconda TOS which they invoke to claim venue for this action is proper in this Court. *Id.* Nowhere in the Complaint do Plaintiffs allege Anaconda has accused them of breaching the EULA, and of course, Plaintiffs do not allege that Anaconda threatened them with a lawsuit, nor could they, given that Anaconda is not aware of having any prior communications with Plaintiffs. *Id.*

First, Plaintiffs have failed to show that their own legal interests are adverse to Anaconda. *See Khodara*, 376 F.3d at 193-194. While the Complaint vaguely alleges that "Anaconda asserts that employees of certain Jicai-managed AGHL affiliates downloaded, installed, and used certain products offered by Anaconda," nowhere does the Complaint identify to which affiliates this allegation applies or why this is sufficient to create standing for Jicai. Complaint, D. I. 1 at ¶ 13. The Complaint ambiguously states that "Jicai manages software procurement on behalf of various AGHL affiliates," but carefully avoids any allegations that identify which affiliates or which software. *See id.* at ¶4. Plaintiffs seemingly invoke Anaconda's April 2024 Texas Action against the Alibaba Affiliates to manufacture the illusion of adverse legal interests with Plaintiffs, but then wholly fail to allege facts supporting how the actions of undefined affiliates vaguely referred to in Paragraph 12 of the Complaint could impute liability to Plaintiffs. *See id.* at ¶ 12.

Without any allegations from Plaintiffs about what legal risk they face for the breach of contract claims alleged against the Alibaba Affiliates, there can be no "substantial controversy … of sufficient immediacy and reality" between Plaintiffs and Anaconda. *Khodara*, 376 F.3d at 193-194. Plaintiffs, who have never before shown their face in the long pending dispute between Anaconda and the Alibaba Affiliates, would seemingly have this Court provide advisory rulings as to Plaintiffs. *See* Kim Decl. ¶ 13. The declaratory relief requested is telling in this regard. The Complaint's prayer seeks a declaration "that the TOS does not constitute a valid and enforceable

contract between Alibaba and Anaconda" and "that the EULA does not constitute a valid and enforceable contract between Alibaba and Anaconda." Complaint, D.I. 1 (Prayer for Relief). Given that "Alibaba" is defined in the Complaint to include only the Plaintiffs, this begs the question as to why this Court should bother to make such declarations, when Plaintiffs do not allege that they have ever used the Anaconda software. *See id.* at D.I. 1. The Complaint's prayer also seeks a declaration that "Alibaba did not breach the TOS" and that "Alibaba did not breach the EULA." *See id.* (Prayer for Relief). Plaintiffs, who again define themselves as "Alibaba," never explain why they would require such declarations since they never allege they entered into those agreements to begin with nor that they have been threatened with breach by Anaconda. *See id.* at D.I. 1. In fact, Plaintiffs seem to seek such declarations so they can impute them to the Alibaba Affiliates without bringing the Alibaba Affiliates into this action--and without regard to how the Texas court may address the Alibaba Affiliates in the Pending Texas Action.

The Court cannot adjudicate "abstract disagreements," and it cannot issue "an advisory opinion based on a hypothetical set of facts." *See Surrick*, 449 F.3d at 527-28. Any dispute between Anaconda and the Plaintiffs remains hypothetical based on the current record. Here, Plaintiffs' allegations fail to show how *they* were at immediate risk of harm from either the TOS they argue is subject to the dispute, or the Anaconda agreements at issue in the April 2024 Texas Action. *See* Complaint, D.I. 1. Because Plaintiffs failed to allege facts sufficient to establish standing, this action should be dismissed.

**B.      Because Plaintiffs Failed to Provide Sufficient Facts Necessary to Determine Whether There is Standing, Plaintiffs Have Also Failed To State a Claim Upon Which Relief Can Be Granted, And Their Complaint Should Be Dismissed.**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The claimant must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). To determine whether the pleading is sufficient, the Third Circuit courts first consider "the elements a plaintiff must plead to state a claim," then "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth," and finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

For many of the same reasons discussed *supra* in IV.A, Plaintiffs have failed to sufficiently plead a claim for declaratory relief as to breach of contact. Plaintiffs make some "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" regarding a possible connection to Anaconda's claims against other entities. *Iqbal*, 556 U.S. at 678; Complaint, D.I. 1. However, Plaintiffs fail to sufficiently lay out allegations to support their conclusion of their own legal risk for a breach of contract claim. *See id.*

Plaintiffs never allege in their Complaint that they entered into or were subject to the contracts they reference in the Complaint. Complaint, D.I.. 1. Plaintiffs never allege that they downloaded or use the specific software implicated in the contracts they reference in the Complaint. *See id.* The Complaint therefore lacks the necessary facts to support the need to resolve a breach of contract claim between Plaintiffs and Anaconda. Plaintiffs' "threadbare recitals" that "AliCloud operates various cloud computing products and services" and that "certain Jicai-managed AGHL affiliates downloaded, installed, and used certain products offered by Anaconda" are not sufficient to state a claim for declaratory relief. *See id.* at ¶¶ 5, 12; *Iqbal*, 556 U.S. at 678.

Thus, the Court should dismiss this action for failure to state a claim upon which relief can be granted.

> ### C. Even if Plaintiffs Could Sufficiently Plead Standing, the Court Should Decline Its Discretion to Exercise Declaratory Jurisdiction Over This Matter.

Because Anaconda is seeking redress from the Anaconda Affiliates in a Texas state court best positioned to adjudicate Texas contract claims, the Court should use its discretion to decline to exercise jurisdiction under the Declaratory Judgment Act in this action.

The Declaratory Judgment Act provides that "[a]ny court of the United States, upon the filing of an appropriate pleading, **may** declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). This Act has a "textual commitment to discretion, [with a] breadth of leeway." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995). The Supreme Court advises that "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* at 287.

In the Third Circuit, courts consider the following seven *Reifer* factors to determine whether to exercise jurisdiction concurrent to a pending state court action: (1) likelihood that the declaration "will resolve the uncertainty of obligation which gave rise to the controversy;" (2) "the convenience of the parties;" (3) public interest in settling this uncertainty; (4) "the availability and relative convenience of other remedies;" (5) "a general policy of restraint when the same issues are pending in a state court;" (6) the need to avoid duplicative litigation; and (7) "prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata." *Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196-97 (3d Cir. 2021) (citing *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d Cir. 2014)).

Here, application of the factors counsel that it would be uneconomical and reward procedural gamesmanship for this Court to exercise its discretion to entertain declaratory relief.

First, and most importantly, there is an existing state action addressing the same issues. Factor 5, the existence of a state proceeding pending on the same issues, "while not dispositive, is a factor that 'militates significantly' in favor of either declining or exercising jurisdiction." *Dianoia's Eatery*, 10 F.4th at 196. Here, Anaconda has resumed the Texas action by filing the Pending Texas Lawsuit against the Anaconda Affiliates, which "militates significantly" for declining jurisdiction. *Id*. Even if the Court were to determine that Plaintiffs have standing to pursue the Declaratory Judgment, the Texas state court action should control, as it involves the parties who have been at the center of this dispute for months at this point. Factor 6, avoiding duplicative litigation, favors denying jurisdiction for this same reason.

Factor 7 is also particularly pertinent here. While Plaintiffs may argue that they filed this declaratory judgment action before the filing of Pending Texas Lawsuit, as discussed *infra* at IV.D, Plaintiffs filed this action merely as "procedural fencing." *See Bd. of Regents for Nw. Mo. State Univ. v. MSE Corp*., 1990 U.S. Dist. LEXIS 17344, at *12-13 (W.D. Mo. 1990) (finding that plaintiff filed the declaratory judgment action to "have the advantage of proceeding in its forum of choice," which was improper because the plaintiff did "not seek affirmative relief against MSE but only a determination of the defenses it could raise against a breach of contract claim"); *Koch Eng'g Co. v. Monsanto Co.*, 621 F. Supp. 1204, 1206-07 (E.D. Mo. 1985) (determining that because the conduct leading to the allegation of breach of contract had already occurred and use of the Declaratory Judgment Act could not "minimize the danger of avoidable loss and the unnecessary accrual of damages," the plaintiff's suit "further[ed] none of the goals of the Declaratory Judgment Act, represent[ed] only a race to the courthouse[, and was the] type of

procedural fencing [that] denies the injured party his right to choose the forum in which to seek redress").

Plaintiffs' filing is just the sort of procedural fencing that is improper under the Declaratory Judgment Act and weighs heavily in favor of the Court declining to exercise jurisdiction in this case. As in *MSE*, Plaintiffs here seek a determination of their defenses, as indicated by their Prayer for Relief. Complaint D.I. 1 (Prayer for Relief). (The Prayer for Relief mainly seeks determinations that the referenced agreements are not valid and enforceable and that Plaintiffs did not breach). Moreover, relevant to Factor 1, a declaration as to Plaintiffs' hypothetical defenses would not resolve the dispute that has been pending between Anaconda and the Alibaba Affiliates for months at this point. *See Dianoia's Eatery*, 10 F.4th at 196. Thus, the declaratory relief requested would not bring about a complete termination of the controversy.

The remaining factors, Factors 2, 3, and 4, further demonstrate that abstaining from an exercise of declaratory jurisdiction is appropriate in this case. As to Factor 2, the parties could be inconvenienced by the potential for piecemeal litigation created by the declaratory judgment action. *See id.* As to Factors 3 and 4, the strength of Texas's interest outweighs that of Delaware as Anaconda's EULA is governed by the law of Texas, where Anaconda also has a principal place of business, and there is a live controversy before a Texas court that will assess Anaconda's breach claims against the Alibaba Affiliates and could potentially serve a useful purpose in defining the legal relations between Plaintiffs and Anaconda. *See id.*

Based on a weighing of the *Reifer* factors, the Court should exercise the "breadth of leeway" provided by the text of the Declaratory Judgment Act and decline jurisdiction.

**D.      Because Plaintiffs Rushed to the Court House and Filed Preemptively, the First-to-File Rule Does Not Apply.**

This Court should dismiss any arguments by Plaintiffs that this action should proceed as the "first filed" because the "first-to-file" rule does not apply in these circumstances. The first-filed rule adopted by the Third Circuit states that "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)). However, when a court is confronted with "rare or extraordinary circumstances, inequitable conduct, bad-faith, or forum shopping[,]" the first-filed rule does not apply. *EEOC*, 850 F.2d at 972.

In deciding whether a party preemptively filed a suit, courts have considered as whether a party's motive in filing is to avoid unfavorable law in an imminent action and whether the party that filed first "engaged in settlement of negotiations in order to forestall the filing of [such a] complaint." *See id.* at 977-79; *Fun-Damental Too, Ltd. v. Universal Music Grp., Inc.*, 1997 U.S. Dist. LEXIS 4784, *15.

In *Stone v. Allied Indus. Supply, LLC*, the plaintiff engaged in settlement discussions with the defendant and learned that the defendant intended to file suit in Michigan. 2023 2023 U.S. Dist. LEXIS 60742, *2-3. The plaintiff filed suit in New Jersey for a declaratory judgement, followed by a substantive action in Michigan filed by the defendant. *Id.* The New Jersey District Court found that the plaintiff's declaratory judgement action was an effort to "avoid facing . . . substantive claims in Michigan[,]" holding that the plaintiff "engaged in a bad faith anticipatory filing." *Id.* at *7, 9.

Just as in *Stone*, Plaintiffs filed a complaint in this Court after the Alibaba Affiliates had been engaging in settlement discussions with Anaconda. *See id.* at *2-3; Kim Decl. ¶ 15-16.

These discussion settlements went beyond mere notice to Plaintiffs that Anaconda raised an allegation against the Alibaba Affiliates – Plaintiff knew that Anaconda had a complaint prepared to be filed. *See Fun-Damental Too*, U.S. Dist. LEXIS 4784 at *15; Durham Decl. ¶ 4, Ex. C. In fact, Anaconda previously filed suit in Travis County, Texas on April 15th, 2024, but withdrew the complaint without prejudice after the Alibaba Affiliates demonstrated what Anaconda believed was a serious intent to settle by signing a tolling agreement and a non-disclosure agreement with regard to the matter at issue. Kim Decl. ¶ 12-13.

By filing a declaratory action with this Court, Plaintiffs are attempting to have this court intervene in the substantive claims Anaconda already brought once before in Texas against the Alibaba Affiliates, and has since renewed. *See* Kim Decl. ¶ 8; Durham Decl. ¶ 5, Exs. D & E. Plaintiffs seemingly took advantage of Anaconda's willingness to settle by monitoring the settlement negotiations between the Alibaba Affiliates and Anaconda and used this opportunity to prepare and file a complaint with this Court, just as the plaintiffs in *Stone*. *See Stone,* U.S. Dist. LEXIS 60742at *7-8. Plaintiffs had knowledge that Anaconda still intended to file in Texas should negotiations break down, as Anaconda made clear the intention to re-file in the event that no settlement was reached. Durham Decl. ¶ 4, Ex. C. This knowledge of Anaconda's intent to re-file and the months-long delay before filing in Delaware supports that Plaintiffs attempted to derail the substantive Texas claim against the Alibaba Affiliates. *See Stone*, U.S. Dist. LEXIS 60742 at *7, 9. The first-to-file rule does not apply here.

V.    **CONCLUSION**

For the reasons set forth in the above, Anaconda respectfully requests that the Court dismiss Plaintiffs' complaint.

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Stephanie O'Byrne*
Brian A. Biggs (DE Bar No. 5591)
Stephanie E. O'Byrne (DE Bar No. 4446)
1201 North Market Street, Suite 2100
Wilmington, DE  19801-1147
Telephone:  302-468-5700
brian.biggs@us.dlapiper.com
stephanie.obyrne@us.dlapiper.com

Gina Durham (CA Bar No. 295910)
555 Mission St., Suite 2400
San Francisco, CA 94105-2933
Telephone: 415-836-2500
gina.durham@us.dlapiper.com

Aislinn Smalling (CA Bar No. 335911)
1900 N. Pearl St, Suite 2400
Dallas, TX 75201
Telephone: 214-743-4500
aislinn.smalling@us.dlapiper.com
*Admitted in California. Not admitted in Texas*
*but being supervised by a licensed Texas Bar*
*member.*

*Attorneys for Defendant Anaconda, Inc.*

Dated: November 21, 2024

16