**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| HANGZHOU JICAI PROCUREMENT CO., LTD. AND BEIJING ALICLOUD APSARA INFORMATION TECHNOLOGY CO., LTD., ) ) ) ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No. 24-1092-GBW |
| ) | |
| ANACONDA, INC., ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:

Laura Lin
Bo Bryan Jin
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, California 94304
laura.lin@stblaw.com
bryan.jin@stblaw.com
(650) 251-5000

David E. Ross (Bar No. 5228)
S. Reiko Rogozen (Bar No. 6695)
Thomas C. Mandracchia (Bar No. 6858)
Hercules Building
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 576-1600
dross@ramllp.com
rrogozen@ramllp.com
tmandracchia@ramllp.com

*Attorneys for Plaintiffs*
*Hangzhou Jicai Procurement Co., Ltd.*
*and Beijing AliCloud Apsara Information*
*Technology Co., Ltd.*

Dated: February 13, 2025

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 3

PROCEDURAL HISTORY ................................................................................................. 6

ARGUMENT ....................................................................................................................... 6

   I.   Plaintiffs Have Standing to Seek a Declaratory Judgment ................................................. 6

      A.  Plaintiffs and Anaconda Have Adverse Legal Interests .......................................... 7

      B.  The Texas Lawsuits Demonstrate the Immediacy and Reality of Plaintiffs' Dispute with Anaconda ........................................................................................... 9

   II.  The Amended Complaint Sufficiently States a Claim Upon Which Relief Can be Granted ............................................................................................................................ 11

   III. The Court Should Exercise Declaratory Judgment Jurisdiction under the *Reifer* Multi-Factor Test ............................................................................................................ 13

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aleynikov v. Goldman Sachs Grp., Inc.,*
 765 F.3d 350 (3d Cir. 2014) ................................................................. 15

*Algrant v. Evergreen Valley Nurseries Ltd. P'ship,*
 126 F.3d 178 (3d Cir. 1997) .......................................................... 1, 2, 20

*Aralac, Inc. v. Hat Corp. of America,*
 166 F.2d 286 (3d Cir. 1948) ................................................................. 12

*Associated Indus. Ins. Co. v. 101 West Lehigh, LLC,*
 2023 U.S. Dist. LEXIS 194739 (E.D. Pa. Oct. 21, 2023) ....................... 17

*BASF Plant Sci., LP v. Nuseed Americas Inc.,*
 2017 U.S. Dist. LEXIS 131294, at *6 (D. Del. Aug. 17, 2017) .............. 11

*B&B Fin. Servs., LLC v. RFGV Festivals, LLC,*
 2019 Del. Super. LEXIS 576 (Del. Super. Ct. Nov. 7, 2019) ........ 7, 8, 14

*Bd. of Regents for Nw. Mo. State Univ. v. MSE Corp.,*
 1990 U.S. Dist. LEXIS 17344 (W.D. Mo. 1990) .................................. 19

*Brillhart v. Excess Ins. Co. of Am.,*
 316 U.S. 491 (1942) ........................................................................... 18

*Certain Underwriters at Lloyds, London v. Good Night Nursing Agency, LLC,*
 2022 U.S. Dist. LEXIS 71059 (D.N.J. Apr. 18, 2022) .......................... 17

*Clouding IP, LLC v. Google Inc.,*
 61 F. Supp. 3d 421, 428 (D. Del. 2014) ............................................... 11

*Const. Party of Pa. v. Aichele,*
 757 F.3d 347 (3d Cir. 2014) .............................................................. 6, 7

*Cordance Corp. v. Amazon.com, Inc.,*
 521 F. Supp. 2d 340 (D. Del. 2007) ..................................................... 12

*Davis v. Wells Fargo,*
 824 F.3d 333 (3d Cir. 2016) .............................................................. 6, 7

*Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co.,*
 10 F.4th 192 (3d Cir. 2021) ............................................................ 16, 17

*E.E.O.C. v. Univ. of Pa.,*
 850 F.2d 969 (3d Cir. 1988) ............................................................... 20

*EchoStar Satellite LLC v. Finisar Corp.*,
    515 F. Supp. 2d 447 (D. Del. 2007)................................................................ 11

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997).................................................................... 20

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
    846 F.3d 625 (3d Cir. 2017).................................................................... 6

*In re Kaplan*,
    143 F.3d 807 (3d Cir. 1998)...................................................................... 8

*In re Mobile Telecomms. Techs., LLC*,
    247 F. Supp. 3d 456 (D. Del. 2017)........................................................ 10, 11

*Intel Corp. v. Future Link Sys., LLC*,
    2015 U.S. Dist. LEXIS 17176 (D. Del. Feb. 12, 2015) ........................... 10

*Kelly v. Maxum Specialty Ins. Grp.*,
    868 F.3d 274 (3d Cir. 2017)..................................................... 8, 14, 16, 17

*Khodara Env't, Inc. v. Blakey*,
    376 F.3d 187 (3d Cir. 2004)...................................................................... 7

*Koch Eng'g Co. v. Monsanto Co.*,
    621 F. Supp. 1204 (E.D. Mo. 1985)........................................................ 19

*Landmark Am. Ins. Co. v. Mandracchia*,
    2019 U.S. Dist. LEXIS 140410 (E.D. Pa. Aug. 19, 2019)........................ 18

*MBIA Ins. Corp. v. Royal Indem. Co.*,
    294 F. Supp. 2d 606 (D. Del. 2003)........................................................ 15

*Nationwide Prop. & Cas. Ins. Co. v. Zatyko*,
    2016 U.S. Dist. LEXIS 159563 (E.D. Pa. Nov. 16, 2016)..................... 18, 19

*Norton v. K–Sea Transp. Partners L.P.*,
    67 A.3d 354 (Del. 2013) ......................................................................... 15

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993)................................................................... 12

*Phila. Indem. Ins. Co. v. Yap*,
    2022 U.S. Dist. LEXIS 88063 (M.D. Pa. May 16, 2022)........................ 8, 14

*Presbytery of the Orthodox Presbyterian Church v. Florio*,
    40 F.3d 1454 (3d Cir. 1994)...................................................................... 7

*Reach Acad. for Boys & Girls, Inc. v. Del. Dep't of Educ.*,
    46 F. Supp. 3d 455 (D. Del. 2014) .................................................................... 11, 12

*Reifer v. Westport Ins. Corp.*,
    751 F.3d 129 (3d Cir. 2014) .......................................................................... *passim*

*St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands*,
    218 F.3d 232 (3d Cir. 2000) .................................................................................. 7

*State Farm Mut. Auto. Ins. Co. v. Dabbene*,
    511 F. Supp. 3d 600 (E.D. Pa. 2021) .................................................................. 18

*Surrick v. Killion*,
    449 F.3d 520 (3d Cir. 2006) .................................................................................. 7

*Thatcher v. Hartford Ins. Co.*,
    1992 U.S. Dist. LEXIS 13045 (E.D. Pa. Aug. 25, 1992) ..................................... 12

*TSMC Tech., Inc. v. Zond, LLC*,
    2015 U.S. Dist. LEXIS 1834 (D. Del. Jan. 8, 2015) .............................................. 6

*United Atl. Ventures, LLC v. Odyssey Transfer & Tr. Co.*,
    2024 U.S. Dist. LEXIS 160999 (D. Del. Sep. 6, 2024) ................................... 14, 16

*Vichi v. Koninklijke Philips Elecs. N.V.*,
    62 A.3d 26 (Del. Ch. 2012) .................................................................................. 8

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
    840 A.2d 606 (Del. 2003) .................................................................................... 13

*W. R. Berkley Corp. v. Dunai*,
    2021 U.S. Dist. LEXIS 85030 (D. Del. May 4, 2021) .......................................... 13

*Wayne Land & Min. Grp. LLC v. Del. River Basin Comm'n*,
    894 F.3d 509 (3d Cir. 2018) ................................................................................ 12

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ............................................................................................ 13

**Statutes and Rules**

28 U.S.C. § 2201(a) .............................................................................................. 7, 13

Federal Rules of Civil Procedure 8(a)(2) .................................................................. 12

## INTRODUCTION

This declaratory judgment action arises from a contract dispute between Plaintiffs, two Alibaba Group entities, and Defendant Anaconda.  Anaconda alleges that thousands of Alibaba Group employees downloaded and installed Anaconda's freely-downloadable software and, in doing so, accepted two Anaconda form agreements.  Anaconda further alleges that Alibaba Group employees used and distributed the software in breach of the form agreements.  Based on these allegations, Anaconda asserted, dropped, and reasserted a breach of contract claim against three Alibaba Group entities in Texas state court, claiming astronomical damages.  But for at least three reasons, the Texas litigation cannot resolve this dispute and the Alibaba Group entities' declaratory judgment claim should be heard in this Court.  *First*, Anaconda filed its lawsuit in the wrong court, because its own form agreements designate Delaware as the exclusive forum for dispute resolution. *Second*, Anaconda named the wrong Alibaba affiliates.  If the form agreements are valid, the Texas defendants would not be parties thereto; Plaintiffs would be.  *Third*, Anaconda's allegations go well beyond the three Texas defendants, which, combined, have fewer than 200 employees and thus are incapable of taking on the obligations that Anaconda alleges apply.  Instead, Anaconda's allegations implicate the distinct Alibaba Group entities affiliated with Plaintiffs.  Plaintiffs thus face the danger of serial, piecemeal lawsuits, which are neither efficient nor fair.

As a result, Plaintiffs had no choice but to file this action under the Declaratory Judgment Act ("DJA"), seeking a global resolution in the correct forum.  Anaconda moves for a dismissal, claiming that Plaintiffs lack standing because Anaconda sued other Alibaba entities, not Plaintiffs, in Texas.  But the DJA allows "*prospective* defendants to sue to establish their nonliability" and "afford [them] an early adjudication without waiting until [their] adversary should see fit to begin suit."  *Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, 189 (3d Cir. 1997)

1

(citations omitted) (emphasis added). Plaintiffs were not required to wait for Anaconda to initiate suit in the correct Delaware forum Anaconda imposed by its own form contract, nor to wait for Anaconda to resolve its own misunderstandings of Plaintiffs' corporate structure and launch piecemeal litigation. For these reasons and as explained further below, Anaconda's motion should be denied.

**Standing:** Plaintiffs' declaratory judgment standing stems from the terms of Anaconda's form agreements, which state that the parties thereto are Anaconda and "the individual or entity acquiring and/or providing access to" the pertinent Anaconda software. Plaintiffs' pleadings, which must be accepted as true at this stage, make clear that Plaintiffs acquired and provided access to software programs for the Alibaba Group employees at issue. As a result, if Anaconda is correct that any of the employees' alleged conduct formed a contract with Anaconda, Plaintiffs would be the contractual counterparties potentially subject to liability for the alleged breach and, for that reason, the proper parties with declaratory judgment standing.

The Texas action, which Anaconda filed in the wrong forum against the wrong parties, does not defeat Plaintiffs' declaratory judgment standing. Anaconda fails to cite a single case supporting its position. Indeed, Plaintiffs are not required to wait to file their declaratory judgment actions until after they are being sued. The Texas lawsuit, although it involves different parties, supports Plaintiffs' declaratory judgment standing because it demonstrates the immediacy and reality of the dispute between Plaintiffs and Anaconda based on the same factual allegations. The Court should therefore reject Anaconda's Rule 12(b)(1) argument, as well as its repackaged Rule 12(b)(6) argument.

**DJA Jurisdiction:** The Court should exercise its discretionary DJA jurisdiction, which is supported by each of the factors that the Third Circuit articulated in *Reifer v. Westport Insurance*

*Corp.*, 751 F.3d 129, 146 (3d Cir. 2014).  In particular, Anaconda's reliance on the fifth *Reifer* factor to argue otherwise is misplaced.  Because the Texas state court action involves different parties and has a different scope, it is ***not*** a "parallel proceeding," the lack of which weighs in favor of the exercise of jurisdiction.

Indeed, the parties' dispute is much broader than the allegations in the Texas state court action.  Although Anaconda only named three Alibaba Group entities as defendants in Texas, its allegations implicate additional Alibaba Group entities for which Plaintiffs acquire software programs.  Given this group-wide scope, Plaintiffs are exclusively positioned to respond to the whole of Anaconda's breach of contract allegations.  Plaintiffs filed this action not, as Anaconda claims, to engage in "procedural fencing," but to seek an opportunity for the parties to resolve their global dispute and to avoid piecemeal litigation.  Anaconda's attempt to delay such a resolution and to escape its designated, home jurisdiction must be rejected.

## FACTUAL BACKGROUND

### Plaintiffs Jicai and AliCloud

Plaintiffs Hangzhou Jicai Procurement Co., Ltd. ("Jicai") and Beijing AliCloud Apsara Information Technology Co., Ltd. ("AliCloud") are affiliates of Alibaba Group Holding Limited ("AGHL"), a publicly-held company whose securities are traded on the New York Stock Exchange and the Stock Exchange of Hong Kong.  Amended Complaint, D.I. 19 ("AC"), ¶ 15.  AGHL is a holding company with no employees or direct business operations.  *Id.* ¶ 16.  Instead, various AGHL affiliates, which are often collectively referred to as the "Alibaba Group," engage in e-commerce, cloud computing, logistics, media and entertainment, and other businesses in China and around the world.  *Id.*

Plaintiff Jicai manages group-wide software procurement for the Alibaba Group. *Id.* ¶ 17. Employees of dozens, if not hundreds, of Alibaba Group entities often use the same software. To avoid reiterative purchases and associated administrative costs, Jicai negotiates and signs one contract with each software provider and provides employees of the various Alibaba Group entities with access to the software. *Id.* If a dispute arises in connection with the software, Jicai handles the dispute as the contracting party to the procurement agreement. *Id.*

Plaintiff AliCloud is a part of the Alibaba Group's cloud computing business. *Id.* ¶ 18. In particular, AliCloud manages technology collaboration and partnership where third-party software is distributed in connection with the Alibaba Group's cloud computing products and services. *Id.* ¶¶ 18, 24. Among other things, AliCloud negotiates terms of such collaboration and partnership, executes pertinent agreements, and handles disputes that arise out of such agreements. *Id.* ¶ 18.

**Defendant Anaconda and Its Breach of Contract Assertion**

Anaconda, a Delaware corporation, provides for free download software products such as "Anaconda Distribution." Anaconda takes the position that anyone who downloads and installs its software is deemed to have agreed to Anaconda's Terms of Service ("TOS") and End User License Agreement ("EULA" and, together with "TOS," the "Anaconda Agreements"), two form agreements that Anaconda unilaterally revises from time to time. AC, Ex. C ¶¶ 14–18.

On April 15, 2024, Anaconda filed a petition in the District Court of Travis County, Texas, Cause No. D-1-GN-24-002361 (the "First Texas Petition"), against AGHL and two of its affiliates, Alibaba Cloud (Singapore) Private Limited ("AliCloud Singapore") and Alibaba Cloud US LLC ("AliCloud US" and, together with AGHL and AliCloud Singapore, the "Texas Defendants"). *See* AC, Ex. C. Anaconda alleged that the Texas Defendants' employees downloaded and installed Anaconda's software and in doing so agreed to the Anaconda Agreements. *Id.* ¶¶ 14–21, 27–28.

According to Anaconda, said employees used Anaconda's software in breach of the Anaconda Agreements, based on the incorrect assumption that each of the Texas Defendants had over two hundred employees. *Id.* ¶ 28. In fact, AGHL has no employees at all, and AliCloud Singapore and AliCloud US each has fewer than one hundred employees. *Id.* ¶ 22.

Anaconda further claimed that said employees distributed Anaconda's software, which is freely downloadable, in violation of the Anaconda Agreements. AC, Ex. C ¶¶ 27, 32–33. In particular, Anaconda alleged that said employees pre-installed or, in Anaconda's words, "embedded" Anaconda's software in Alibaba's cloud offerings and provided public access to the software on an "open source mirror site." *Id.* ¶ 33.

**Failed Negotiation Between Alibaba and Anaconda**

Although the First Texas Petition did not name Jicai and AliCloud as defendants, the allegations therein concerned employees for whom Jicai managed software procurement and purported distribution activities managed by AliCloud. As a result, Jicai and AliCloud proactively held discussions with Anaconda regarding its claims. AC ¶¶ 27–30. To facilitate the discussions, the Texas Defendants entered into a tolling agreement and a non-disclosure agreement with Anaconda, and Anaconda voluntarily dismissed the First Texas Petition without prejudice. *Id.* ¶¶ 25–26.

The parties failed to reach an agreement. On September 23, 2024, counsel for Anaconda informed counsel for Jicai and AliCloud that Anaconda intended to refile the Texas lawsuit. D.I. 23-3. On November 20, 2024, nearly a month after Plaintiffs filed this action, Anaconda filed a second petition in the District Court of Travis County, Texas, Cause No. D-1-GN-24-009474 (the "Second Texas Petition"), asserting substantially the same claims against the Texas

Defendants.  *See* AC, Ex. D.  The Texas Defendants' responses to the Second Texas Petition are not due until March 31, 2025.

## PROCEDURAL HISTORY

On September 30, 2024, Plaintiffs Jicai and AliCloud initiated this action by filing a Complaint against Anaconda.  D.I. 1.  On November 21, 2024, Defendant moved to dismiss the Complaint.  D.I. 13.  On January 9, 2025, Plaintiffs filed an Amended Complaint.  D.I. 19.  On January 23, 2025, Defendant filed the instant motion, moving to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").  D.I. 21.

## ARGUMENT

### I.    Plaintiffs Have Standing to Seek a Declaratory Judgment

A Rule 12(b)(1) challenge to declaratory judgment standing may be either facial or factual. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).  "The former challenges subject matter jurisdiction without disputing the facts alleged in the complaint," while the latter "attacks the factual allegations underlying the complaint's assertion of jurisdiction."  *Id.*  Because Anaconda "did not challenge the validity of any of the Plaintiffs' factual claims as part of its motion, it brought only a facial challenge."  *In re Horizon Healthcare Servs. Inc. Data Breach Litig*., 846 F.3d 625, 632 (3d Cir. 2017); *see also TSMC Tech., Inc. v. Zond, LLC*, 2015 U.S. Dist. LEXIS 1834, at *9–10 & n.4 (D. Del. Jan. 8, 2015) (finding the defendant's Rule 12(b)(1) motion a facial attack, despite its references to documents outside of pleadings, because the defendant did not rely on the extraneous materials to "challenge the factual accuracy of allegations in the Complaint"), *adopted by* 2015 U.S. Dist. LEXIS 17660 (D. Del. Feb. 13, 2015).  In reviewing a facial attack, the court must "consider the allegations of the complaint as true," *Davis*, 824 F.3d at 346; *see also Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) ("[T]he court must

only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.").

Under the DJA, federal courts "may declare the rights and other legal relations of any interested party seeking such declaration" when there is a "case of actual controversy" as required by Article III of the Constitution.  28 U.S.C. § 2201(a).  In the Third Circuit, a declaratory judgment plaintiff has standing if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 193–94 (3d Cir. 2004) (quoting *St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000)).  The plaintiff need not have suffered "a completed harm" in seeking a declaratory judgment, "so long as there is a substantial threat of real harm that remains throughout the course of the litigation."  *Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006) (citing *Presbytery of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994)).

### A.     Plaintiffs and Anaconda Have Adverse Legal Interests

Anaconda readily concedes the existence of a substantial controversy between itself and Alibaba Group.  In Anaconda's own words, "there is and has for some time been a dispute between Anaconda and certain Alibaba entities."  D.I. 22 ("Mot.") at 1.  Plaintiffs are the correct Alibaba Group entities to this contract dispute because they would be parties to the purported form agreements.  As a result, Anaconda cannot speak out of both sides of its mouth by admitting a controversy and yet denying that Plaintiffs' "own legal interests are adverse to Anaconda" in connection with this dispute.  *See* Mot. at 9.

At the outset, "[i]t is well established in Delaware that only parties to a contract may be liable for breach of that particular contract."  *B&B Fin. Servs., LLC v. RFGV Festivals, LLC*, 2019 Del. Super. LEXIS 576, at *7 (Del. Super. Ct. Nov. 7, 2019) (citing, *inter alia*, *Vichi v.*

*Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 59 (Del. Ch. 2012)).  Therefore, the Alibaba Group entities who would be the parties to the Anaconda Agreements have legal interests that are adverse to Anaconda's.  *See, e.g.*, *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 280 (3d Cir. 2017) (declaratory action between contractual parties); *Phila. Indem. Ins. Co. v. Yap*, 2022 U.S. Dist. LEXIS 88063, at *1–4 (M.D. Pa. May 16, 2022) (same).

    To identify the contractual parties, one does not need to look beyond the terms of the contracts.  *See In re Kaplan*, 143 F.3d 807, 816 (3d Cir. 1998) ("We analyze a claim for breach of contract by first examining the plain language of the parties' agreements.").  This is particularly true where, as here, the contracts at issue are form agreements not actually signed by any Alibaba Group entities.  According to the terms of the Anaconda Agreements, the parties thereto are Anaconda and "the individual or entity acquiring and/or providing access to" the pertinent Anaconda software.  AC, Ex. A at 1; Ex. B at 1.  As alleged in the Amended Complaint, which must be accepted as true for the purpose of this motion, Plaintiff Jicai manages group-wide software procurement for the Alibaba Group, negotiates and signs purchase contracts, and provides employees of the various Alibaba Group entities with access to purchased software.  AC ¶ 17.  Thus, if any of the Alibaba Group entities entered into contracts with Anaconda, Jicai would be a party to the Anaconda Agreements.

    Anaconda is incorrect in its assertion that "nowhere does the [Amended] Complaint identify [for] which [Alibaba Group] affiliates [Jicai procures software] or why this is sufficient to create standing for Jicai."  Mot. at 9; *see also id.* at 6 (similar statements).  The Amended Complaint specifically pleads that Jicai procures software for the ***Texas Defendants'*** employees. *Id.* ¶ 23.  Thus, Jicai—and not the Texas Defendants—is the proper party to this dispute.

8

Anaconda also tries to insist, without support, that Plaintiffs must concede liability to even state a claim, criticizing Plaintiffs for not unconditionally conceding in the Amended Complaint that "they have contracted with Anaconda." Mot. at 6; *see also id.* at 12 ("Plaintiffs never allege in their Amended Complaint that they entered into or were subject to the contracts they reference in the Amended Complaint."). But the validity of the Anaconda Agreements is of course a key dispute in this case. *See* AC ¶¶ 38, 40. As the Amended Complaint plainly states, "if Anaconda is correct that any of these employees' alleged conduct formed a contract with Anaconda, Jicai— not any of the Texas Defendants—is the contractual counterparty." *Id.* ¶ 23. Jicai is not obligated to concede that it *did* contract with Anaconda because whether Anaconda formed a binding contract is central to the very dispute that prompted the need for this declaratory judgment action.

Similarly, the Amended Complaint explains AliCloud's potential breach of contract liability—and therefore declaratory judgment standing—with regard to the alleged distribution of Anaconda's software. *Id.* ¶ 24. Anaconda asserts that the Texas Defendants' employees distributed Anaconda's software through the Platform for AI ("PAI") product and an "open source mirror site" in contravention of the Anaconda Agreements. *Id.* As alleged in the Amended Complaint, any third-party software distributed through these Alibaba Cloud products and services would have been provided by Plaintiff AliCloud, who manages technology collaboration and partnership in connection with Alibaba Group's cloud computing products and services. *Id.* As a result, Plaintiff AliCloud also would be a party to the Anaconda Agreements and thus has adverse legal interests with Anaconda.

### B. The Texas Lawsuits Demonstrate the Immediacy and Reality of Plaintiffs' Dispute with Anaconda

Anaconda appears to take the position that its choice to name the Texas Defendants, and not Plaintiffs Jicai and AliCloud, in its Texas Petitions deprives Plaintiffs of their declaratory

judgment standing. *See* Mot. at 9–11. Anaconda is wrong. In this Circuit, "[i]t is not necessary for [Declaratory Judgment] Plaintiffs to demonstrate that [Declaratory Judgment Defendant] has made specific threats of litigation against them in order to establish subject matter jurisdiction." *In re Mobile Telecomms. Techs., LLC*, 247 F. Supp. 3d 456, 461 (D. Del. 2017). Instead, Anaconda's litigation activities against third parties show that the dispute between Plaintiffs and Anaconda is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Khodara Envtl., Inc.*, 376 F.3d at 193–94.

   *In re Mobile Telecommunications Technologies* is instructive. In that case, the plaintiffs sought a declaratory judgment that the defendant's patents were not infringed by third-party products, after the defendant sued those third parties (and not the declaratory judgment plaintiffs) for infringement. 247 F. Supp. 3d at 458–59. Then-Chief Judge Stark denied the defendant's Rule 12(b)(1) motion, holding that the plaintiffs had declaratory judgment standing in view of the "nature" of the accusations against the third-parties and the "connections" between the declaratory judgment plaintiffs and the third-parties. *Id*. at 461–62. Here, Anaconda sued the Texas Defendants, who are affiliates of Plaintiffs', and alleges breach of the Anaconda Agreements, to which Plaintiffs would be parties. Both the "nature" of such allegations and the "connection" between Plaintiffs and Texas Defendants support declaratory judgment standing. *See id.*; *see also Intel Corp. v. Future Link Sys., LLC*, 2015 U.S. Dist. LEXIS 17176, at *21–23 (D. Del. Feb. 12, 2015) (finding declaratory judgment standing where the plaintiff is implicated in the defendant's allegations against third-parties).

   Moreover, Anaconda has made allegations implicating other Alibaba Group entities who are not parties to the Texas lawsuits. Anaconda alleges that Alibaba Group employees performed "thousands of unauthorized installs of the Anaconda product." AC, Ex. C ¶¶ 29–31. AGHL has

no employees at all, and AliCloud Singapore and AliCloud US each has fewer than one hundred employees. AC ¶ 22. Anaconda has thus necessarily accused other entities within the Alibaba Group for whom Jicai similarly manages software procurement of breach of contract. *See id.* ¶ 17. Such an accusation in itself gives Jicai standing to seek a declaratory judgment. *See EchoStar Satellite LLC v. Finisar Corp.*, 515 F. Supp. 2d 447, 452 (D. Del. 2007) (finding declaratory judgment standing based on accusations in licensing communications).

For the reasons stated above, this Court should, as Judge Stark did in *In re Mobile Telecommunications Technologies*, "[a]ccept[] as true all well-pleaded factual allegations in [the Amended Complaint]," "view[] these allegations in the light most favorable to DJ Plaintiffs," and "conclude[] that these parties have established declaratory judgment jurisdiction." 247 F. Supp. 3d at 463.[1]

## II. <u>The Amended Complaint Sufficiently States a Claim Upon Which Relief Can be Granted</u>

To have a second bite of the apple, Anaconda repackages its standing arguments, claiming that the Amended Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6) of the FRCP. *See, e.g.*, Mot. at 12 ("For many of the same reasons discussed *supra* in IV.A, Plaintiffs have failed to sufficiently plead a claim… ."). "When a Rule 12(b)(6) motion relies on the absence of Article III standing, it is analyzed pursuant to Federal Rule of Civil Procedure Rule 12(b)(1)." *Reach Acad. for Boys & Girls, Inc. v. Del. Dep't of Educ.*,

---

[1] Anaconda cannot elide the *In re Mobile Telecommunications Technologies* holding on the grounds that that was a patent case. The DJA standing analysis is the same, whether or not the subject matter concerns patents. *BASF Plant Sci., LP v. Nuseed Americas Inc.*, 2017 U.S. Dist. LEXIS 131294, at *6 (D. Del. Aug. 17, 2017) (quoting *Clouding IP, LLC v. Google Inc.*, 61 F. Supp. 3d 421, 428 (D. Del. 2014)) (This Court decides "motion to dismiss for lack of subject matter jurisdiction under our court of appeals' standard, not the Federal Circuit's, because these standards are 'not unique to patent law.'").

46 F. Supp. 3d 455, 463–64 (D. Del. 2014).  As a result, Anaconda's Rule 12(b)(6) argument must also be rejected for the same reasons stated above.  *See supra* at 6–11.

In any event, the Amended Complaint sufficiently alleges a claim under the DJA.  When considering a Rule 12(b)(6) motion, the Court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Wayne Land & Min. Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526–27 (3d Cir. 2018) (citation omitted).  In particular, "[c]omplaints alleged under the Declaratory Judgement Act are to be liberally construed."  *Thatcher v. Hartford Ins. Co.*, 1992 U.S. Dist. LEXIS 13045, at *4 (E.D. Pa. Aug. 25, 1992) (citing *Aralac, Inc. v. Hat Corp. of America*, 166 F.2d 286 (3d Cir. 1948)).  A complaint sufficiently states a claim as long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief."  FRCP 8(a)(2); *see also Cordance Corp. v. Amazon.com, Inc.*, 521 F. Supp. 2d 340, 345–46 (D. Del. 2007) (denying motion to dismiss declaratory judgment claim under Rule 8(a)(2)).

The Amended Complaint provides more than the required "short and plain statement."  It explains the background surrounding the parties' breach of contract dispute, *see* AC ¶¶ 19–24, and attaches both the contracts at issue and the Texas Petitions, which form a part of the Amended Complaint.  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (considering "exhibits attached to the complaint" in deciding motion to dismiss).   It also explains Plaintiffs' roles in the contract dispute and the events that led to this lawsuit.  *See* AC ¶¶ 17–18, 25–36.  The Amended Complaint then plainly alleges the grounds on which Plaintiffs are entitled to a declaratory judgment, *i.e.*, "(1) the TOS and the EULA do not constitute valid and legally binding contracts between the parties; (2) Alibaba did not breach the TOS or the EULA;

and (3) Anaconda did not suffer any damages as a result of the alleged breach." *Id.* ¶ 40.  The

pleading thus meets and exceeds the Rule 8 requirement.  *See W. R. Berkley Corp. v. Dunai*,

2021 U.S. Dist. LEXIS 85030, at \*7 (D. Del. May 4, 2021) (quoting *VLIW Tech., LLC v. Hewlett-*

*Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (denying motion to dismiss breach of contract claim

because the complaint includes statements regarding "the existence of the contract," "the breach

of an obligation imposed by that contract," and "the resultant damage").

### III.  The Court Should Exercise Declaratory Judgment Jurisdiction under the *Reifer* Multi-Factor Test

Under the DJA, "any court of the United States … may declare the rights and other legal

relations of any interested party."  28 U.S.C. § 2201(a).  "This provision 'place[s] a remedial arrow

in the district court's quiver' and confers a 'unique and substantial discretion' on federal courts to

determine whether to declare litigants' rights.  *Reifer*, 751 F.3d at 139 (quoting *Wilton v. Seven*

*Falls Co.*, 515 U.S. 277, 286, 288 (1995)).  "[T]he propriety of declaratory relief in a particular

case will depend upon a circumspect sense of its fitness informed by the teachings and experience

concerning the functions and extent of federal judicial power."  *Wilton*, 515 U.S. at 287 (quotation

omitted).

In *Reifer*, the Third Circuit articulated seven non-exhaustive factors that a district court

should consider in determining whether to exercise DJA jurisdiction, including "(1) the likelihood

that a federal court declaration will resolve the uncertainty of obligation which gave rise to the

controversy; (2) the convenience of the parties; (3) the public interest in settlement of the

uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a

general policy of restraint when the same issues are pending in a state court; (6) avoidance of

duplicative litigation; [and] (7) prevention of the use of the declaratory action as a method of

procedural fencing or as a means to provide another forum in a race for res judicata."

751 F.3d at 146.[2]  The district court should "guide its exercise of sound and reasoned discretion by giving meaningful consideration to the following factors to the extent they are relevant."  *Id.*  Here, each of these factors weighs in favor of the Court exercising jurisdiction.

**Factor 1:**  Contrary to Anaconda's assertion, the declaratory relief Plaintiffs seek is far from "hypothetical."  Mot. at 15.  As discussed above, Plaintiffs would be parties to the Anaconda Agreements—the purported contracts at issue in this dispute (*see supra* 7–10)—and are thus potentially liable for the alleged breach thereof.  *See B&B Fin. Servs.*, 2019 Del. Super. LEXIS 576, at *7.  A declaratory judgment as to the validity and breach of these contracts will unquestionably "resolve the uncertainty of obligation which gave rise to the controversy," as courts often do in settling contractual disputes.  *See, e.g.*, *Kelly*, 868 F.3d at 288 ("Declaratory relief by the District Court would unquestionably clarify and settle the dispute regarding [insurer]'s obligations under the insurance policy."); *United Atl. Ventures, LLC v. Odyssey Transfer & Tr. Co.*, 2024 U.S. Dist. LEXIS 160999, at *15 (D. Del. Sep. 6, 2024) (finding the first two *Reifer* factors "weigh in favor of the Court exercising discretion" because "the Court's order will resolve the dispute between the parties and prevent potentially significant liability."); *Phila. Indem. Ins. Co.*, 2022 U.S. Dist. LEXIS 88063, at *16 ("[D]eclaratory relief would settle the dispute regarding [defendant's] obligations arising out of the Adventure Sports Contracts.").  Thus, Factor 1 weighs in favor of Plaintiffs.

**Factor 2:**  Factor 2 also favors Plaintiffs.  It strains credulity for Anaconda to argue that litigating in Delaware—its home jurisdiction—is inconvenient.  *See* AC ¶¶ 8, 10.  Moreover, Anaconda itself designated Delaware as the forum for litigating "ANY DISPUTES ARISING

---

[2]  The *Reifer* court also identified an eighth factor that only applies in the insurance context.  *See Reifer*, 751 F.3d at 146.

FROM [THE TOS]."  AC ¶ 11 (quoting Section 15.11 of the TOS, with emphasis in original).
Anaconda points to earlier versions of the Anaconda Agreements that included a Texas choice of
forum clause.  *See* Mot. at 4.  But Anaconda cannot ignore the latest and current versions of the
Anaconda Agreements while asserting claims based on alleged "ongoing conduct."  AC, Ex. C
¶ 44; AC Ex. D ¶ 45.  Indeed, when Anaconda last amended the TOS on March 31, 2024, it
specifically replaced Texas with Delaware as the chosen forum and declared that the revision
"supersedes all prior or contemporaneous . . . agreements" including the earlier versions of the
Anaconda Agreements.  AC ¶¶ 11–12 (quoting Section 15.2 of the TOS).  Delaware is thus not
only a convenient forum—it is also the only forum for resolving this dispute.[3]

Anaconda argues that "[a]s to Factor 2, the parties could be inconvenienced by the potential
for piecemeal litigation created by the declaratory judgment action," yet did not expound on what
or how the potential for piecemeal litigation could come about.  Mot. at 15.  To the contrary,
Plaintiffs filed this action to avoid piecemeal litigation and to seek a global resolution that covers
the alleged use and distribution of Anaconda's software by employees of both the Texas
Defendants and other Alibaba Group entities, which the Texas action cannot achieve.  *See MBIA
Ins. Corp. v. Royal Indem. Co.*, 294 F. Supp. 2d 606, 616 (D. Del. 2003) (declining to stay federal
action in favor of state court litigation because the stay "would likely cause piecemeal litigation
rather than avoid it").

---

[3]  To the extent that the Anaconda Agreements contain any ambiguity as to the choice of forum,
such ambiguity should be construed against Anaconda.  *See Aleynikov v. Goldman Sachs Grp.,
Inc.*, 765 F.3d 350, 366 (3d Cir. 2014) ("The doctrine of *contra proferentem* is well established in
Delaware contract law.  When one side of a contract was unilaterally responsible for the drafting,
courts apply *contra proferentem* and construe ambiguous terms against the drafter.") (citing
*Norton v. K–Sea Transp. Partners L.P.*, 67 A.3d 354, 360 (Del. 2013)).

**Factor 3:**  As to the third factor, public interest weighs in favor of this Court resolving the Delaware action.  Anaconda argues that "Anaconda's EULA is governed by the law of Texas."  Mot. at 13.  Not so.  The exclusive Delaware choice of law clause in the current version of the TOS supersedes and voids the Texas choice of law clause in the earlier versions of the Anaconda Agreements including the EULA.  *See* AC, Ex. A ¶ 15.2 ("These TOS are the complete agreement between the parties regarding the subject matter of these TOS and supersedes all prior or contemporaneous communications, understandings or agreements (whether written or oral) unless a Custom Agreement has been executed … .").  Although the tolling agreement and the non-disclosure agreement between the Texas Defendants and Anaconda are governed by Texas law, they are not relevant to this dispute, which solely concerns the alleged breach of the Anaconda Agreements.

Furthermore, Anaconda asserts no special interest of state law, such as an unsettled question of state law or any important policy issue.  *United Atl. Ventures, LLC*, 2024 U.S. Dist. LEXIS 160999, at *15 ("There is no special interest of state law that would suggest that the Court should decline to exercise its discretion under the Declaratory Judgment Act to support comity, and [defendant] provides no reason to suggest that the public interest does not support hearing this case."); *Kelly*, 868 F.3d at 288 n.13 (finding "little reason for a federal court to be reluctant about deciding this case" because "[t]he parties do not contend that there is an unsettled question of state law or important policy issue implicated by the coverage claims here").  This Court is more than capable of deciding the current case.  *See Dianoia's Eatery, LLC v. Motorists Mut. Ins. Co*., 10 F.4th 192, 210 (3d Cir. 2021) (noting that federal and state courts are "equally capable of applying state contract law").

**Factor 4:** Because neither Plaintiff is a party to the Texas action, "there is currently no alternative channel for adjudicating their rights" as to the Anaconda Agreements. *Certain Underwriters at Lloyds, London v. Good Night Nursing Agency, LLC*, 2022 U.S. Dist. LEXIS 71059, at *16 (D.N.J. Apr. 18, 2022). Absent a declaratory judgment from this Court, the designated forum for resolving this dispute, Plaintiffs would have to face threats of similar, piecemeal lawsuits Anaconda may separately bring against other Alibaba Group entities. *See supra* at 15–16. Because no alternative remedies are available, let alone more convenient ones, the fourth factor weighs in favor of Plaintiffs. *See Associated Indus. Ins. Co. v. 101 West Lehigh, LLC*, 2023 U.S. Dist. LEXIS 194739, at *11 (E.D. Pa. Oct. 21, 2023) (finding the fourth factor weighs in favor of plaintiff because "[n]either party suggests that other remedies exist, let alone that other remedies would be more convenient" and because "this Court is able to effectively grant relief").

**Factor 5:** In its opening brief, Anaconda places great significance on Factor 5, claiming that this Court should abstain from exercising its jurisdiction because of "parallel litigation" pending in Texas state court. Mot. at 3, 14. At the outset, "the mere existence of a related state court proceeding does not require a district court to decline to exercise jurisdiction under the DJA"; "the existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider when exercising its DJA jurisdiction." *Reifer*, 751 F.3d at 144–45 (quotation omitted). But Anaconda's error is more fundamental—this action and the Texas lawsuit are ***not*** "parallel litigation" for the purpose of this factor.

"The fifth factor's policy of restraint is applicable only when the same issues are pending in state court ***between the same parties***." *Dianoia's Eatery, LLC*, 10 F.4th at 206 (quotation omitted) (emphasis added). "Proceedings are ***not*** parallel merely because they have the potential

to dispose of the same claims." *Kelly*, 868 F.3d at 283 (emphasis added).  Here, Plaintiffs and the Texas Defendants are not the same; the mismatch of parties is particularly significant in view of Anaconda's accusation of additional Alibaba Group entities' employees' use of its software, which cannot be resolved in the Texas state court action.  *See supra* at 7–10.

Indeed, in articulating the *Reifer* factors, the Third Circuit also directed district courts to consult Supreme Court precedents for additional factors concerning related state court actions, such as "the scope of the pending state court proceeding," "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding," and "whether necessary parties have been joined."  751 F.3d at 146 n. 21 (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942))  Relative to this action, the Texas lawsuit is narrower in scope with different parties and cannot satisfactorily adjudicate the global dispute between Anaconda and the Alibaba Group. The lack of a parallelism thus favors exercising federal jurisdiction.  *See State Farm Mut. Auto. Ins. Co. v. Dabbene*, 511 F. Supp. 3d 600, 614 (E.D. Pa. 2021) ("The fifth and sixth factors, asking courts to consider the federal courts' general policy of restraint when the same issues are pending in state court and the avoidance of duplicative litigation, both weigh in favor of exercising jurisdiction, because there is no parallel proceeding pending in state court.").

**Factor 6:**  As discussed *supra*, the Texas action is not a parallel state proceeding between the same parties.  Without a parallel state action, proceeding with the instant action could not be duplicative, and this factor thus "weighs in favor of this Court exercising jurisdiction." *Nationwide Prop. & Cas. Ins. Co. v. Zatyko*, 2016 U.S. Dist. LEXIS 159563, at *11 (E.D. Pa. Nov. 16, 2016) (finding "there currently exists no duplicative litigation in state court" absent a parallel action); *see also Landmark Am. Ins. Co. v. Mandracchia*, 2019 U.S. Dist. LEXIS 140410, at *3 (E.D. Pa. Aug. 19, 2019) ("Since the Court has determined that [the related state court action] is not a parallel

18

proceeding, [the fifth and sixth] *Reifer* factors weigh in favor of this Court's exercise of discretionary jurisdiction.").  If anything, deciding the Delaware action here would provide a global resolution for all parties and avoid piecemeal and duplicative litigation down the line.

**Factor 7:**  Anaconda cites two cases, both out-of-circuit and pre-*Reifer*, to support its accusation that Plaintiffs engaged in "procedural fencing."  *See* Mot. at 14–15 (citing *Bd. of Regents for Nw. Mo. State Univ. v. MSE Corp.*, 1990 U.S. Dist. LEXIS 17344, at *12-13 (W.D. Mo. 1990); *Koch Eng'g Co. v. Monsanto Co.*, 621 F. Supp. 1204, 1206–07 (E.D. Mo. 1985)). These cases are distinguishable.  In each of them, the DJA action and the affirmative action involved the same parties and the DJA plaintiff filed its case solely because "it figured it would be more convenient to litigate the dispute in Missouri."  *MSE Corp.*, 1990 U.S. Dist. LEXIS 17344, at *13–14; *see also Koch Eng'g Co.*, 621 F. Supp. at 1207 (finding that the DJA action "represents only a race to the courthouse").  In contrast, Anaconda's Texas lawsuits are in the wrong court against the wrong defendant, and will, at best, address only a fragment of the parties' dispute and cannot provide a global resolution.  *See supra* at 17–18.  Plaintiffs were thus forced to file this lawsuit under the DJA with this Court pursuant to the TOS *Anaconda itself drafted*; by abiding the TOS forum selection clause Anaconda itself imposed, Plaintiffs' action is far from the "procedural fencing" that Anaconda decries.

Moreover, both of Anaconda's cases involved only past conduct—a decisive point the court reached in finding that the plaintiffs engaged in procedural fencing.  *See MSE Corp.*, 1990 U.S. Dist. LEXIS 17344, at *12–13 (finding that plaintiff "has not shown a need to avoid accrual of avoidable damages" and that plaintiffs "[was] seeking a declaratory judgment solely in regard to its past conduct"); *Koch Eng'g Co.*, 621 F. Supp. at 1206–07 (similar findings).  By contrast, here, Anaconda's claims are based on alleged "ongoing conduct."  AC, Ex. C ¶ 44; AC,

Ex. D ¶ 45. Exercising jurisdiction will thus further the purpose of the DJA to "avoid accrual of avoidable damages to [a party] not certain of [its] rights." *Algrant*, 126 F.3d at 189. Factor 7 weighs in favor of exercising jurisdiction. As a result, this Court should exercise jurisdiction based on a weighing of the *Reifer* factors as applied here.[4]

### CONCLUSION

For the reasons stated above, Plaintiffs respectfully request the Court to deny Defendant's motion.[5]

ROSS ARONSTAM & MORITZ LLP

*/s/ David E. Ross*

David E. Ross (Bar No. 5228)
S. Reiko Rogozen (Bar No. 6695)
Thomas C. Mandracchia (Bar No. 6858)
Hercules Building
1313 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 576-1600
dross@ramllp.com
rrogozen@ramllp.com
tmandracchia@ramllp.com

*Attorneys for Plaintiffs*
*Hangzhou Jicai Procurement Co., Ltd.*
*and Beijing AliCloud Apsara Information*
*Technology Co., Ltd.*

*Of Counsel*:

Laura Lin
Bo Bryan Jin
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, California 94304
laura.lin@stblaw.com
bryan.jin@stblaw.com
(650) 251-5000

Dated: February 13, 2025

---

[4] Anaconda also argues that the first-to-file rule should not apply in this case. *See* Mot. 16–17. The first-to-file rule "gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988). As explained above, the Texas action and the Delaware action do not involve the same parties, *see supra* at 17–18. And regardless, neither party has made such a request. The first-to-file rule is thus irrelevant to this Motion.

[5] If the Court were to determine that dismissal of Plaintiffs' Complaint is appropriate, then it should grant Plaintiffs leave to amend. FRCP 15(a)(2) provides that "leave [to amend] should be freely given when justice so requires." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted).