IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| HANGZHOU JICAI PROCUREMENT CO., LTD. AND BEIJING ALICLOUD APSARA INFORMATION TECHNOLOGY CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> ANACONDA, INC., <br><br> Defendant. | Civil Action No. 24-1092-CFC |

David Evan Ross, S. Reiko Rogozen, and Thomas C. Mandracchia, ROSS
ARONSTAM & MORITZ LLP, Wilmington, Delaware; Laura Lin and Bo Bryan
Jin, SIMPSON THACHER & BARTLETT LLP, Palo Alto, California

   *Counsel for Plaintiffs*

Stephanie E. O'Byrne, Matthew S. Middleton, and Brian A. Biggs, DLA PIPER
LLP (US), Wilmington, Delaware; Gina Durham, DLA PIPER LLP (US), San
Francisco, California; Aislinn Smalling, DLA PIPER LLP (US), Dallas, Texas

   *Counsel for Defendant*

### MEMORANDUM OPINION

August 19, 2025
Wilmington, Delaware

COLM F. CONNOLLY
CHIEF JUDGE

Plaintiffs Hangzhou Jicai Procurement Co., Ltd. (Jicai) and Beijing AliCloud Apsara Information Technology Co., Ltd. (AliCloud) have sued Defendant Anaconda, Inc. (Anaconda) for a declaratory judgment with respect to the validity, enforceability, and breach of two contracts. Pending before me is Anaconda's Renewed Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) (D.I. 21). Anaconda also moves for me to decline to exercise my discretionary jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. D.I. 21.

## I.    BACKGROUND

This action arises out of a breach of contract case that Anaconda filed in Texas state court. Anaconda is a Delaware company that develops and provides a platform that enables businesses to use open-source and artificial intelligence software solutions. D.I. 24 ¶¶ 3–4. Anaconda offers both free and paid plans. *See* D.I. 24 ¶ 6; D.I. 24-1 at 3–5. Under the free plan, individuals and businesses with fewer than 200 employees may use Anaconda's platform without charge. D.I. 24 ¶ 6; D.I. 24-1 at 3–4. Businesses with more than 200 employees, however, must pay a license fee to download and use the software. *See* D.I. 24 ¶ 6; D.I. 24-1 at 4 ("Using the Free Offerings for a Commercial Purpose requires a Paid Plan

with Anaconda."). The license fee requirement for commercial use of Anaconda's services appears in two click-wrap agreements—the Terms of Service and the End User License Agreement (collectively, the Anaconda Agreements). *See* D.I. 24-1 at 4; D.I. 24-2 at 4. Before installing Anaconda's software, a user must affirmatively agree to the End User License Agreement. D.I. 24 ¶¶ 6–7; *see also* D.I. 19-1 at 49.

On April 15, 2024, Anaconda sued Alibaba Group Holding Limited (AGHL), Alibaba Cloud (Singapore) Private Limited (AliCloud Singapore), and Alibaba Cloud US LLC (AliCloud US) (collectively, the Texas Defendants) in Texas state court. *See* D.I. 19-1 at 31–42; D.I. 24 ¶ 8. Anaconda alleged that the Texas Defendants breached the Anaconda Agreements by engaging in commercial use of Anaconda's software without paying license fees. *See* D.I. 19-1 at 37–40; D.I. 24 ¶¶ 6–7.

A few weeks after Anaconda filed the Texas suit, the parties began settlement negotiations. *See* D.I. 24 ¶ 11. To facilitate these settlement discussions, Anaconda and the Texas Defendants entered into two agreements, effective as of May 10, 2024: a Mutual Non-Disclosure Agreement (NDA) and a Tolling Agreement. D.I. 24 ¶ 11. The only parties to these agreements were Anaconda and the Texas Defendants. D.I. 23-1 at 2; D.I. 23-2 at 2. In the Tolling Agreement, Anaconda agreed to dismiss the Texas suit without prejudice. D.I. 24

¶ 12; D.I. 23-1 at 2. Anaconda and the Texas Defendants also agreed to toll the statute of limitations until the parties executed a settlement agreement, Anaconda refiled its suit, or one of the parties exercised its right to terminate the Tolling Agreement. D.I. 23-1 at 2–3; *see also* D.I. 24 ¶ 12. Anaconda dismissed its Texas suit on May 10, 2024. D.I. 24 ¶ 14.

Anaconda and the Texas Defendants continued to engage in settlement negotiations for the next four months. D.I. 24 ¶ 15. Plaintiffs Jicai and AliCloud allege in their Amended Complaint that they "attempted in good faith for more than four months to resolve Anaconda's claims after Anaconda dismissed the Texas lawsuit." D.I. 19 ¶ 27. More specifically, Plaintiffs allege that both Jicai and AliCloud attended, "through in-house and outside counsel," a May 16, 2024 videoconference to discuss Anaconda's allegations. D.I. 19 ¶¶ 28–29. After this videoconference, Plaintiffs allegedly "continued to negotiate a potential resolution in good faith through counsel-led discussions with Anaconda." D.I. 19 ¶ 30.

Anaconda disputes these factual allegations. According to Anaconda's Chief Commercial Officer, Jane Kim, Jicai and AliCloud "were never mentioned to Anaconda when negotiating with [the Texas Defendants] with regard to the April 2024 Texas Action or when executing the Non-Disclosure Agreement to facilitate discussion of commercial licensing terms." D.I. 24 ¶ 16. Kim also states that before Plaintiffs filed this declaratory judgment action, "Anaconda had no

3

knowledge of Plaintiffs or their connection to the dispute at issue, if any." D.I. 24 ¶ 17.

Settlement negotiations between the Texas Defendants and Anaconda ultimately stalled in August or September of 2024. *See* D.I. 19 ¶ 31 (alleging that "[n]egotiations broke down in August 2024"); D.I. 24 ¶ 15 (alleging that "negotiations broke down in or around September 2024"). On September 23, 2024, counsel for Anaconda notified counsel for the Texas Defendants that it seemed like the parties were "too far apart" to reach a resolution. D.I. 23-3 at 2. Consequently, at its October 2024 board meeting, Anaconda planned to secure board approval to refile suit in Texas. *See* D.I. 23-3 at 2.

A week later, on September 30, 2024, Jicai and AliCloud—nonparties to Anaconda's Texas suit—filed this declaratory judgment action. D.I. 1. Jicai and AliCloud are Chinese corporations with their principal places of business in Hangzhou, China and Beijing, China, respectively. D.I. 19 ¶¶ 6, 7. Jicai and AliCloud are both affiliates of AGHL, a holding company that has no employees or direct business operations. D.I. 19 ¶¶ 15–16. AGHL has several affiliates, including Jicai and AliCloud, all of which combine to form the Alibaba Group. *See* D.I. 19 ¶ 16. Jicai "provides centralized procurement management services to various businesses and entities within the Alibaba Group." D.I. 19 ¶ 17. Jicai's responsibilities therefore include "negotiat[ing] terms of group-wide software

procurement, execut[ing] procurement agreements, and handl[ing] disputes that arise out of such agreements." D.I. 19 ¶ 17. AliCloud "manages technology collaboration and partnership for Alibaba Group's cloud computing products and services," a role that requires AliCloud to "negotiate[] terms of such collaboration and partnership, execute[] pertinent agreements, and handle[] disputes that arise out of such agreements." D.I. 19 ¶ 18.

Plaintiffs seek by this action a judgment declaring that: (1) the Terms of Service and the End User License Agreement do not constitute "valid and enforceable contract[s] between Alibaba and Anaconda"; (2) "Alibaba did not breach" the Terms of Service and the End User License Agreement; and (3) "Anaconda did not suffer any damages as a result of the alleged breach" of the Terms of Service and the End User License Agreement.[1] D.I. 19 at 8. Plaintiffs also request a judgment "[a]warding Alibaba its costs and attorneys' fees and expenses" as well as "such other relief as this Court deems just and proper." D.I. 19 at 8.

On November 20, 2024, Anaconda refiled in Texas its suit against the Texas Defendants. D.I. 19-1 at 45–57. The next day, Anaconda filed in this action a motion to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil

---

[1] In their Amended Complaint, Plaintiffs define "Alibaba" to refer only to Jicai and AliCloud. D.I. 19 at 1.

5

Procedure 12(b)(1) and 12(b)(6). D.I. 11. Anaconda also moved for me to decline

to exercise my discretionary jurisdiction under the Declaratory Judgment Act.

D.I. 11. On January 6, 2025, Plaintiffs filed an unopposed motion for leave to file

an amended complaint. D.I. 17. Plaintiffs subsequently filed their Amended

Complaint on January 9, 2025. D.I. 19. On January 23, 2025, Anaconda filed the

present motion. D.I. 21.

## II.    LEGAL STANDARDS

### A.    Declaratory Judgment Standing

"The party invoking federal jurisdiction bears the burden of establishing [the

existence of a justiciable controversy]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

561 (1992). The Declaratory Judgment Act provides that "[i]n a case of actual

controversy within its jurisdiction . . . any court of the United States . . . may

declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought." 28 U.S.C.

§ 2201(a). Courts may issue declaratory judgments only when "the constitutional

standing requirements of a 'case' or 'controversy' are met." *St. Thomas–St. John

Hotel & Tourism Ass'n v. Gov't of U.S. V.I.*, 218 F.3d 232, 240 (3d Cir. 2000)

(citing U.S. Const., art. III, § 2). Under Article III of the Constitution, standing

requires "(1) an injury-in-fact, (2) a sufficient causal connection between the injury

and the conduct complained of, and (3) a likelihood that the injury will be

redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358–59 (3d Cir. 2015)).

A declaratory judgment plaintiff has Article III standing if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *St. Thomas–St. John Hotel*, 218 F.3d at 240 (quoting *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)). A declaratory judgment can be sought "in advance of the full harm expected," but the action still must involve "a justiciable controversy rather than abstract, hypothetical or contingent questions." *Id.* (internal quotation marks and citation omitted). The party seeking a declaratory judgment must therefore "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Lattaker v. Rendell*, 269 F. App'x 230, 233 (3d Cir. 2008) (internal citation omitted); *see also Ke v. DiPasquale*, 828 F. App'x 98, 101 (3d Cir. 2020) ("Issuance of a declaratory judgment . . . requires a threat of future harm.").

## B.    Rule 12(b)(1)

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. *See* Fed. R. Civ. P. 12(b)(1). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1),

because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). A motion to dismiss under Rule 12(b)(1) is characterized as either a facial or factual challenge to the court's subject matter jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial challenge attacks subject matter jurisdiction "without disputing the facts alleged in the complaint." *Id.* When deciding a facial challenge, courts must therefore "consider the allegations of the complaint as true." *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A factual challenge, by contrast, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Davis*, 824 F.3d at 346 (quoting *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)) (alteration in the original). A defendant may establish a factual challenge by submitting a signed declaration that disputes the plaintiff's factual allegations. *See Davis*, 824 F.3d at 346. With factual challenges, courts may consider evidence outside the pleadings, and the plaintiff's allegations are not presumed to be true. *Id.*

## III. DISCUSSION

### A.    Article III Subject Matter Jurisdiction

Anaconda argues that I lack subject matter jurisdiction over this action because Plaintiffs do not have standing under Article III. *See* D.I. 22 at 7–11.

The parties first dispute whether Anaconda has made a facial or factual challenge to subject matter jurisdiction. *See* D.I. 22 at 8–11; D.I. 27 at 6; D.I. 28 at 2–3. Plaintiffs argue that Anaconda's challenge is facial because Anaconda "did not challenge the validity of any of the Plaintiffs' factual claims as part of its motion." *See* D.I. 27 at 6 (quoting *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017)). Not so. By submitting a signed declaration that disputes Plaintiffs' factual allegations, Anaconda has made a factual challenge. *See Davis*, 824 F.3d at 346.

The Amended Complaint seeks to connect Plaintiffs to the Texas action, in part alleging that "Plaintiffs Jicai and AliCloud attempted in good faith for more than four months to resolve Anaconda's claims after Anaconda dismissed the Texas lawsuit." D.I. 19 ¶ 27. The Amended Complaint also alleges that Plaintiffs participated in settlement negotiations by attending a May 2024 videoconference and engaging in "counsel-led discussions with Anaconda." D.I. 19 ¶¶ 28–30.

Anaconda disputes these allegations in its opening brief, asserting that "Plaintiffs never informed Anaconda of their existence, let alone their participation in the negotiation process." D.I. 22 at 9. To support this assertion, Anaconda submits a signed declaration from Jane Kim, Anaconda's Chief Commercial Officer. D.I. 24. In her declaration, Kim states that "Plaintiffs in this action were never mentioned to Anaconda when negotiating with [the Texas Defendants] with

regard to the April 2024 Texas Action or when executing the Non-Disclosure Agreement to facilitate discussion of commercial licensing terms." D.I. 24 ¶ 16. She also states that "[p]rior to the filing of this declaratory judgment action, Anaconda had no knowledge of Plaintiffs or their connection to the dispute at issue, if any." D.I. 24 ¶ 17. Anaconda further points to the NDA and Tolling Agreement, noting how the Texas Defendants and Anaconda are the only signatories. D.I. 22 at 10; D.I. 24 ¶ 11; D.I. 23-1 at 2; D.I. 23-2 at 2. Because Anaconda has asserted a factual challenge to standing, and therefore subject matter jurisdiction, I will not presume the allegations in Plaintiffs' Amended Complaint to be true. *See Mortenson*, 549 F.2d at 891. And when evaluating Anaconda's present motion to dismiss, I may consider evidence outside of the pleadings. *See Davis*, 824 F.3d at 346.

I turn then to whether Plaintiffs have standing to bring this declaratory judgment action. The parties' dispute centers on two elements of declaratory judgment standing—adverse legal interests as well as immediacy and reality. *See* D.I. 22 at 8–11; D.I. 27 at 7–11.

### 1.    Adverse Legal Interests

The parties do not dispute that Anaconda and particular Alibaba Group entities—the Texas Defendants—have adverse legal interests. *See* D.I. 22 at 1 (stating that "there is and has for some time been a dispute between Anaconda and

certain Alibaba entities—*other than Plaintiffs*—in Texas") (emphasis in the
original); D.I. 27 at 7 (arguing that "Anaconda readily concedes the existence of a
substantial controversy between itself and Alibaba Group"). The parties dispute,
however, whether Plaintiffs—Alibaba Group entities that are not parties to the
Texas lawsuit—have adverse legal interests with Anaconda. *See* D.I. 22 at 8–9;
D.I. 27 at 7–9. Plaintiffs argue that their legal interests are adverse to Anaconda
because "they would be parties to the purported form agreements [with
Anaconda]" and therefore "are the correct Alibaba Group entities to this contract
dispute." D.I. 27 at 7. But the Amended Complaint fails to plausibly establish
how Plaintiffs are parties to the agreements between Anaconda and the Texas
Defendants. Plaintiffs and Anaconda therefore do not have adverse legal interests.

Plaintiffs insist, based on the language of the Anaconda Agreements, that "if
any of the Alibaba Group entities entered into contracts with Anaconda, Jicai
would be a party to the Anaconda Agreements." D.I. 27 at 8. The parties do not
dispute that the contracts at issue are form, click-wrap agreements that are not
signed by either Anaconda or the Texas Defendants. *See* D.I. 22 at 9 (describing
the Anaconda Agreements as "click-wrap software agreements to access Anaconda
software"); D.I. 27 at 8 ("[T]he contracts at issue are form agreements not actually
signed by any Alibaba Group entities."). The Anaconda Agreements each state
that the contract is between Anaconda and "the individual or entity acquiring

and/or providing access to" the relevant software.  D.I. 24-1 at 2; D.I. 24-2 at 2.

Plaintiffs rely on this language—as well as the Amended Complaint's allegations

with respect to Plaintiffs' organizational responsibilities—to argue that Plaintiffs

"would be" parties to the Anaconda Agreements.  *See* D.I. 27 at 8.

But nowhere in the Amended Complaint do Plaintiffs allege that they were

the "entit[ies] acquiring and/or providing access to" the Anaconda software at

issue.  Instead, the Amended Complaint broadly alleges that Jicai "provides

centralized procurement management services to various businesses and entities

within the Alibaba Group," D.I. 19 ¶ 17, "including the Texas Defendants,"

D.I. 19 ¶ 23, and that, as part of its duties, "Jicai negotiates terms of group-wide

software procurement, executes procurement agreements, and handles disputes that

arise out of such agreements," D.I. 19 ¶ 17.  The Amended Complaint similarly

alleges that AliCloud "manages technology collaboration and partnership for

Alibaba Group's cloud computing products and services," a responsibility that

involves "negotiat[ing] terms of such collaboration and partnership, execut[ing]

pertinent agreements, and handl[ing] disputes that arise out of such agreements."

D.I. 19 ¶ 18.

None of Plaintiffs' responsibilities, as stated in the Amended Complaint, are

directed expressly to the alleged misuse of Anaconda's software.  The Amended

Complaint does not allege that Plaintiffs ever procured Anaconda's software for

the Texas Defendants. *See, e.g.*, D.I. 19 ¶ 23 (stating only that "Plaintiff Jicai manages centralized procurement for Alibaba Group entities' employees, including the Texas Defendants"). Even if Plaintiffs did procure the software, the Amended Complaint does not allege anything about the process by which Plaintiffs procured Anaconda's software, what software was procured, or how Plaintiffs provided access to the Texas Defendants. Instead, as stated above, the Amended Complaint merely recites high-level descriptions of Plaintiffs' responsibilities without any mention of Anaconda's software. *See* D.I. 19 ¶¶ 17–24.

Based on the Amended Complaint's allegations, Plaintiffs are simply hypothetical parties to the Anaconda Agreements. Although "[d]eclaratory judgments are often forward-looking," courts "may review only 'concrete legal issues, presented in actual cases, not abstractions.'" *Sherwin-Williams Co. v. County of Delaware*, 968 F.3d 264, 269 (3d Cir. 2020) (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)). Even if, as Plaintiffs argue, Plaintiffs need not concede liability to state a claim, D.I. 27 at 9, they must still allege facts that establish a specific connection to Anaconda's dispute with the Texas Defendants. Plaintiffs have not done so. Plaintiffs therefore have not established that their legal interests are adverse to those of Anaconda.

13

### 2.    Immediacy and Reality

Even if Plaintiffs and Anaconda had adverse legal interests, Plaintiffs have still failed to establish the immediacy and reality requirement of Article III standing.  "As far as timing, the general rule is that a plaintiff in federal court must have Article III standing on the date the lawsuit was commenced." *Lutter v. JNESCO*, 86 F.4th 111, 124 (3d Cir. 2023); *see Lujan*, 504 U.S. at 570 n.5 ("[S]tanding is to be determined as of the commencement of suit.").  A declaratory judgment plaintiff need not have suffered "the full harm expected." *St. Thomas–St. John Hotel*, 218 F.3d at 240.  But a plaintiff must "allege facts from which it appears there is a substantial likelihood that [it] will suffer injury in the future." *Lattaker*, 269 F. App'x at 233 (internal citation omitted).  That is, when a plaintiff "seek[s] a declaratory judgment to protect against a feared future event, [a] plaintiff must demonstrate that the probability of that future event occurring is real and substantial." *Salvation Army v. Dep't of Cmty. Affs. of N.J.*, 919 F.2d 183, 192 (3d Cir. 1990).  Direct threats of litigation, however, are not necessary. *See Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp. of Am.*, 257 F.2d 485, 490 (3d Cir. 1958) (noting that "it is not essential that there be a direct threat of litigation in order to invoke the Declaratory Judgment Act").

Here, Plaintiffs have failed to allege any threat of future harm.  In the Amended Complaint, Plaintiffs state that "an actual controversy of sufficient

immediacy and reality exists between Alibaba and Anaconda" because "Anaconda claims that Alibaba breached Anaconda's Terms of Service . . . and End User License Agreement." D.I. 19 ¶ 2. This allegation is misleading. The Amended Complaint defines "Alibaba" to refer to Plaintiffs only. *See* D.I. 19 at 1 (referring to Plaintiffs Jicai and AliCloud together as "Alibaba"). By using this language, the Amended Complaint thus suggests that Anaconda has accused *Plaintiffs Jicai and AliCloud* of breaching the Anaconda Agreements. But Anaconda has sued only the Texas Defendants, not Plaintiffs, in the Texas breach of contract action. *See* D.I. 19-1 at 45–57.

Nowhere in the Amended Complaint do Plaintiffs allege that Anaconda has accused *them* of breaching the Anaconda Agreements. Instead, Plaintiffs allege that "Anaconda's dispute threatens Plaintiffs Jicai and AliCloud" because Jicai and AliCloud are the proper respondents to Anaconda's Texas suit. D.I. 19 ¶ 21; *see* D.I. 19 ¶¶ 22–24. But Plaintiffs have not demonstrated how the probability of being named as parties in the Texas suit is "real and substantial." *Salvation Army*, 919 F.2d at 192. Plaintiffs also do not allege whether and how they would be responsible for any damages awarded in the Texas action. Moreover, it is hard to believe that, at the time of filing their initial Complaint, Plaintiffs faced a serious threat of harm from Anaconda. According to Anaconda's Chief Commercial Officer, Anaconda had no previous knowledge of or interactions with Plaintiffs

15

before Plaintiffs filed this declaratory judgment action. *See* D.I. 24 ¶¶ 16–17; *see also* D.I. 23-1 at 2; D.I. 23-2 at 2 (showing that Anaconda and the Texas Defendants were the only signatories to the Tolling Agreement and NDA executed during settlement negotiations).

Plaintiffs argue that "Anaconda's litigation activities against third parties show that the dispute between Plaintiffs and Anaconda is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." D.I. 27 at 10. To support this assertion, Plaintiffs point to Anaconda's suit against some of Plaintiffs' affiliates, the Texas Defendants. D.I. 27 at 9–10. Anaconda's dispute with the Texas Defendants falls short of what is necessary to support Plaintiffs' declaratory judgment standing.

Plaintiffs direct me to *In re Mobile Telecommunications Technologies, LLC*, 247 F. Supp. 3d 456 (D. Del. 2017) as "instructive" authority. D.I. 27 at 10. But the declaratory judgment plaintiff in *In re Mobile Telecommunications* faced a much more significant threat of harm than Plaintiffs do here. The declaratory plaintiffs in *In re Mobile Telecommunications* sold networking equipment to cable network operators. *Id.* at 458. The defendant in that case, Mobile Telecommunications (MTel), had previously sued some of the plaintiffs' customers, alleging patent infringement. *Id.* at 457–58. In the customer lawsuits, MTel alleged that the plaintiffs' products "directly infringe[d] the asserted

16

patents." *Id.* at 460. MTel specifically mentioned the plaintiffs' products as examples of equipment that constituted direct infringement. *Id.* at 460–61.

The plaintiffs in *In re Mobile Telecommunications* sought a declaratory judgment that neither they nor purchasers of their products infringed MTel's patents. *Id.* at 457. MTel moved to dismiss the action, arguing that the plaintiffs had not pleaded an actual case or controversy between the parties. *Id.* at 460. The court held that the connections between MTel's third-party customer suits and the plaintiffs "may give rise to a substantial controversy." *Id.* at 461 (internal quotation marks omitted). Even though MTel had not made specific threats of litigation against the plaintiffs, MTel's "repeated references [in the customer suits] identifying [the plaintiffs'] products as infringing" weighed in favor of subject matter jurisdiction. *Id.* at 461. The court also considered the nature of MTel's accusations against the plaintiffs' customers, holding that "suing identically situated parties and asserting identical . . . claims involving identical standards and identical . . . conduct" constituted a "real and immediate threat." *Id.* at 462.

Here, neither the connection between Plaintiffs and Anaconda's suit against the Texas Defendants nor the nature of Anaconda's allegations against the Texas Defendants establishes that Plaintiffs have standing. In *In re Mobile Telecommunications*, a connection existed between the plaintiffs and MTel's litigation against third-party customers because the customers and the plaintiffs

17

sold the same, allegedly infringing products. *Id.* at 460–61. In their opposition in this case, Plaintiffs identify only one connection between themselves and Anaconda's action against the Texas Defendants—Plaintiffs "would be parties" to the Anaconda Agreements. *See* D.I. 27 at 10. Aside from vague allegations that Plaintiffs manage software procurement and collaboration for the Texas Defendants, *see* D.I. 19 ¶¶ 23–24, it is unclear how, if at all, Plaintiffs are connected to Anaconda's suit against the Texas Defendants.

The nature of Anaconda's allegations against the Texas Defendants also differs from MTel's allegations against the customers of the plaintiffs in *In re Mobile Telecommunications*. In that case, "the underlying circumstances giving rise to potential suits against [the plaintiffs] [were] no different than they [were] for a suit against [the plaintiffs'] customers." 247 F. Supp. 3d at 462. Here, the parties are not "identically situated." *Id.* The Texas Defendants are subject to potential liability for breach of contract by allegedly entering into the Anaconda Agreements and engaging in unauthorized commercial use of Anaconda's software. *See* D.I. 19-1 at 52–55 (alleging that "several IP addresses can be traced to [the Texas Defendants] that amount to thousands of unauthorized installs of the Anaconda product"). To resolve this dispute, the Texas Defendants negotiated with Anaconda for four months. *See* D.I. 24 ¶¶ 11–15. After settlement negotiations failed, Anaconda refiled suit against the same parties—the Texas

18

Defendants. *See* D.I. 19-1 at 45–57 (Anaconda refiling a breach of contract claim against the Texas Defendants on November 20, 2024).

Plaintiffs, however, are simply entities within the Alibaba Group that have not been accused of engaging in or facilitating unauthorized commercial use of Anaconda's software. And Plaintiffs' involvement in resolving Anaconda's claims against the Texas Defendants is disputed, as evidenced in part by Plaintiffs not being signatories to the NDA and Tolling Agreement executed during settlement negotiations. *See* D.I. 19 ¶¶ 27–30; D.I. 24 ¶¶ 15–17; D.I. 23-1 at 2; D.I. 23-2 at 2.

Plaintiffs also maintain that Jicai has standing to seek a declaratory judgment because "Anaconda has made allegations implicating other Alibaba Group entities who are not parties to the Texas lawsuits." D.I. 27 at 10. Plaintiffs seem to argue that because the Texas Defendants do not have enough employees to engage in unauthorized commercial use of Anaconda's software, "Anaconda has thus necessarily accused other entities within the Alibaba Group for whom Jicai similarly manages software procurement of breach of contract." D.I. 27 at 11. This argument fails for the same reasons stated above. Plaintiffs have not alleged sufficient facts to demonstrate how Jicai's general software procurement responsibilities expose Jicai to an immediate and real threat of future harm.

### B.    Discretionary Declaratory Judgment Act Jurisdiction

Finally, Plaintiffs argue that I should use my discretion to exercise declaratory judgment jurisdiction. *See* D.I. 27 at 13–14 (arguing that the factors outlined in *Reifer v. Westport Insurance Corp.*, 751 F.3d 129 (3d Cir. 2014) counsel the exercise of declaratory judgment jurisdiction). The Declaratory Judgment Act "does not itself create an independent basis for federal jurisdiction but instead provides a remedy for controversies otherwise properly within the court's subject matter jurisdiction." *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 394 (3d Cir. 2016). A district court's discretion to exercise its declaratory judgment jurisdiction therefore presupposes the existence of subject matter jurisdiction. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."). Accordingly, if a district court lacks subject matter jurisdiction over a claim, it need not consider whether to exercise its discretion under the Declaratory Judgment Act. *See Allen v. DeBello*, 861 F.3d 433, 444 (3d Cir. 2017) (holding that a district court "did not need to consider whether to exercise its discretion using the [*Reifer*] factors" because the court "correctly determined that the [d]efendants were not properly sued in th[e] action"). Because Plaintiffs have failed to establish that they have Article III

standing, I lack subject matter jurisdiction over this action.  I therefore need not consider whether to exercise my discretion under the *Reifer* factors.

## IV.  CONCLUSION

For the reasons stated above, I will grant Anaconda's motion to dismiss.

The Court will issue an Order consistent with this Memorandum Opinion.

21